George S. Hogan, Respondent, *v.* John C. O'Brien, Appellant.

*Contract giving one person the exclusive privilege to sell another's land — failure of the former to perform his agreement, made with a vendee to whom the owner had given a contract of sale, to improve the land — improper refusal to charge as to the effect of a verdict for the defendant.*

John C. O'Brien, the owner of a parcel of real estate, entered into a written contract with a firm, to which, as stated therein, he gave "the exclusive right and privilege until two years from date hereof to sell and contract for the sale of" the lands, the sales to be made upon certain specified conditions and the option being given to the firm to lay out and grade streets into and through the tract, and put in sewers and water mains, the firm agreeing to forthwith open streets and O'Brien agreeing to pay the cost of the improvements by conveyances to the firm of lots upon such streets.

Thereafter the firm entered into negotiations with a third party for the sale to him of one of the lots, which was consummated by a contract of sale under seal executed by the third party and O'Brien; and upon the attention of the firm being called to the fact that the contract contained no provision requiring certain improvements to be made, the firm executed an agreement (not under seal) to improve the street on which the lot abutted "by putting sewer in the street with five-foot Portland cement walks, with a good and substantial roadbed."

In an action brought by the vendee in the contract of sale against O'Brien to rescind the contract because the improvements provided for had not been made, the court submitted to the jury the question whether, under all the circumstances, the firm were held out by apparent authority to be the agents of O'Brien and authorized to sign the contract (not under seal) to improve the street.

*Held,* that the trial court erred in refusing to charge "that the effect of a verdict for the defendant would leave Mr. Hogan (the plaintiff) all his rights to the lot in question under his written contract with O'Brien," and also in ruling that the defendant "could not ask for the direction of a verdict in defendant's behalf, and that being denied, then ask to go [to] the jury;"

That, assuming that the instrument not under seal signed by the firm was the personal contract of the firm, it furnished no basis for the plaintiff's rescinding the contract which he had entered into with O'Brien.

The court did not determine whether an action for a breach of the stipulations found in the instrument not under seal signed by the firm should be brought against O'Brien, the present defendant, the owner of the property, or against the firm.

Appeal by the defendant, John C. O'Brien, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Monroe on the 1st day of November, 1897, upon the verdict of a jury, and also from an order bearing date the 27th day of October, 1897, and entered in said clerk's

office, denying the defendant's motion for a new trial made upon the minutes.

On the 16th day of September, 1890, the defendant was the owner of a parcel of real estate on the west side of Lake avenue in the city of Rochester containing about 32.08 acres of land, and on that day entered into a written contract, under seal, with Warner & Bradley, wherein he gave to them " the exclusive right and privilege until two years from date hereof to sell and contract for the sale of" the land. The sales were to be made upon the terms and conditions and in accordance with the restrictions indicated in the contract. It was stipulated in the agreement, viz., " that the parties of the second part may, at their option, lay out and grade such street or streets into and through said tract, and at their option put in main sewers and laterals, water mains and laterals, or such of those as shall seem best to them, for the increase of the value and sale of said lots; and they agree to forthwith open and construct the streets through and upon said tract and proceed therewith with all reasonable diligence, and as fast as any such improvements are made and certified by the surveyors' estimate, and payments thereon are made by said second parties and certified by the receipts of the contractors, inspectors or surveyors, the said first party agrees, in consideration of the performance of said work and in payment therefor, to deed and convey to said parties of the second part, by good and sufficient warranty deed, such lots upon the streets so improved, to be selected by said second parties, as shall be sufficient at the schedule prices of said lots with the added cost of the improvements to be assessed on such lots as hereinafter provided, to pay for the cost of such improvements on such streets."

Warner & Bradley commenced operations under the agreement entered into by them with O'Brien, and in October entered into negotiations with the plaintiff for the sale to him of lot No. 3, section F, on the south side of Bishop street, for the sum of $1,750. The negotiations were consummated by a written contract bearing date the 14th day of October, 1890, executed under the hand and seal of the plaintiff and the defendant. Fifty dollars was paid on the contract October 24, 1890, and ten dollars on the same day, and $540 was paid on the contract January 2, 1891, and indorsed thereon by Warner & Bradley. After the contract was delivered the plain-

tiff discovered that it contained no provision requiring certain improvements to be made upon the property, and called the attention of Warner & Bradley to the omissions, and thereupon they executed an instrument in writing (not under seal) in the following words:

"For a consideration of $1 in hand paid, we hereby agree to improve Bishop street, on the convent property, by putting sewer in the street with five-foot Portland cement walks, with a good and substantial roadbed. All improvements to be made as soon as the weather will permit, from and after this date.

"WARNER & BRADLEY.

"ROCHESTER, N. Y., *Oct.* 24, 1890."

It is averred in the complaint that the plaintiff paid over to Warner & Bradley upon the purchase price of the said lot, viz.: "On October 14, 1890, the sum of three hundred fifty dollars; on October 14, 1890, the sum of fifty dollars; on October 14, 1890, the sum of ten dollars; on January 1, 1891, the sum of five hundred forty dollars, and on January 2, 1892, the sum of four hundred dollars; on January 1, 1891, $17.32 interest; on July 7, 1891, $24.00 interest, and on January 2, 1892, $24.00 interest, making in all paid by plaintiff to said Warner & Bradley, agents as aforesaid, upon his said contract of purchase, the total sum of one thousand three hundred and fifty dollars and $65.32 of interest moneys."

The answer of the defendant admits that the plaintiff has paid to Warner & Bradley upon the purchase price of lot No. 3, referred to in the complaint, the several sums and amounts of money, and upon the dates respectively set forth in the complaint.

It is alleged in the complaint that Bishop street has never been improved, as contemplated by the parties, and by the conditions of the contract so made between the defendant and Warner & Bradley, or the contract of purchase so made by the plaintiff, and the said street has never been constructed, nor have the sewers been put in, nor the sidewalks laid, all of which said improvements should have been made not later than the spring or summer of the year 1891, although the plaintiff has frequently requested to have the same done. The plaintiff avers that by reason of the premises he "has

elected to terminate said contract, and to cancel and rescind the same and all relations thereunder, and his said purchase of lot number three; and, accordingly, on or about the 11th day of September, 1896, and the 15th day of October, 1896, plaintiff did so terminate, cancel and rescind said contract, and notified the defendant of the said termination and rescission, and then and there offered to return to the defendant his said written contract of purchase and agreement as to improvements, and to surrender up to defendant all plaintiff's rights thereunder, and to restore to defendant all that he, plaintiff, had received under or in pursuance of said contract, and demanded of defendant that he, said defendant, return and repay to plaintiff all moneys theretofore paid by plaintiff under said contract."

It is averred that the defendant " declined, and refused, and neglected to so repay said moneys or to restore plaintiff to his position before the making of said contract."

The answer of the defendant denies that Warner & Bradley had any authority to make any contract for him with respect to the sale of any such lot or lots. The answer alleges there is a balance due upon the contract of $400, which became due and payable October 14, 1892, and that the plaintiff has neglected and refused to pay the same ; and the defendant alleges " that he is ready and he hereby offers to convey to the plaintiff or to the purchaser at the sale to be made under the judgment herein the said lot three (3), on receiving the balance remaining unpaid on said contract with plaintiff."

At the close of the plaintiff's evidence the defendant moved for a nonsuit upon several grounds, which was denied, and an exception taken. At the close of the evidence the defendant asked the court to direct a verdict for the defendant and for a foreclosure of the contract under the counterclaim which is in proof. The motion was denied, and an exception was taken. Thereupon the plaintiff moved for a verdict in behalf of the plaintiff. The motion was denied and an exception was taken. Thereupon the defendant. asked for the direction of a verdict in favor of the defendant " upon the general ground that the plaintiff has not shown facts sufficient to constitute a cause of action."

The motion was denied and an exception was taken by the defendant. Thereupon the court stated " that there seemed to be a

question for the jury on the apparent authority of Warner & Bradley."

Thereupon the plaintiff's counsel stated " that if that question was submitted to the jury, the defendant must withdraw his request for the direction of a verdict."

Defendant's counsel declined to withdraw his request for a direction of a verdict for the defendant, and thereupon the court stated, viz., " that the defendant's counsel must take one horn or the other of the dilemma, and could not ask for a direction of a verdict in defendant's behalf, and that being denied, then ask to go [to] the jury."

The defendant took an exception to this ruling. Thereupon it seems the counsel for the defendant " consented that the court direct a verdict." Thereupon the court observed as follows : " If you both join in a request for the direction of a verdict, I will direct a verdict. Gentlemen of the jury : Both counsel having asked — " Thereupon the counsel for the defendant stated : " I ask to withdraw that. I will ask to go to the jury upon the question of fact whether, under all the circumstances testified to, Warner & Bradley were held out by apparent authority to be the agents of O'Brien and authorized to sign the contract of October 24th."

The court then observed, viz. : " I think that is a question of fact to be submitted to the jury."

Thereupon the defendant's counsel asked to go to the jury upon the question of *laches*, which request was denied and an exception was taken.

At the close of the charge the defendant's counsel asked the court to charge " that the effect of a verdict for the defendant would leave Mr. Hogan all his rights to the lot in question under his written contract with O'Brien."

The request was declined and an exception was taken.

He also requested the court to charge : " That the effect of a verdict for the defendant would be to leave Mr. Hogan with all his rights under the contract for the purchase of the lot, and that he would be credited on the purchase price with all the payments which he had made." The request was declined and an exception was taken.

There was some evidence given tending to indicate that the plaintiff received the two papers, the contract signed by O'Brien and the

other one signed by Warner & Bradley relating to the improvements, at the same time. Evidence was given tending to show that Bishop street was not improved " by putting sewer in the street with five-foot Portland cement walks, with a good and substantial roadbed."

*James S. Havens*, for the appellant.

*J. Frank Morse*, for the respondent.

HARDIN, P. J.:

Plaintiff's complaint contains no allegations of fraud or fraudulent practices on the part of the defendant. Nor does it aver any mistake of fact inducing the plaintiff to enter into the contract for the purchase of the lot mentioned in the complaint.

The gravamen of the complaint seems to rest upon the allegations of failure on the part of the defendant, as well as on the part of Warner & Bradley, to carry out the stipulations found in the supplemental contract executed by Warner & Bradley. There are no allegations in the complaint alleging a breach of the stipulations on the part of the defendant or the stipulations on the part of Warner & Bradley, nor any demand for damages in consequence thereof. The evidence indicates that the defendant was ready and willing to carry out the stipulations found in the contract which he had executed personally with the plaintiff.

Upon reading the contract between O'Brien and Warner & Bradley it is seen that Warner & Bradley were authorized to negotiate sales of the property and to receive and enjoy the benefit of prices that might be realized above those enumerated in the stipulations entered into with O'Brien. It is, therefore, discoverable that they became interested in the project of making sales of the lots, and, therefore, to some extent, interested in the sale of the lot purchased by the plaintiff. Such being the relation of the parties to that contract it is reasonable to suppose that Warner & Bradley personally became obligated to the plaintiff, in virtue of their memorandum, to put in the sewer and cement walks and substantial roadbed mentioned in the agreement made by them. Besides, Warner & Bradley had no right, under their contract with the defendant, to lay sidewalks, and had no direct authority from the defendant to make a

contract binding him to lay sidewalks. Assuming the memorandum signed by them to be their personal contract it furnishes no basis for the plaintiff's rescinding the contract which he entered into with O'Brien. Doubtless a breach of the stipulations found in the memorandum signed by Warner & Bradley would furnish the foundation for an action to recover damages, but it is hardly necessary to determine on this occasion whether such an action should be brought against O'Brien or against Warner & Bradley.

It seems that the court fell into an error in refusing to charge " that the effect of a verdict for the defendant would leave Mr. Hogan all his rights to the lot in question under his written contract with O'Brien."

(2) The court also erred in ruling that the defendant " could not ask for a direction of a verdict in defendant's behalf, and that being denied then ask to go [to] the jury." (*Clark* v. *Clark*, 91 Hun, 295 ; *Shultes* v. *Sickles*, 147 N. Y. 704 ; *Switzer* v. *Norton*, 3 App. Div. 175.) However, the defendant subsequently withdrew his consent to allow the court to direct a verdict, and made one request which was allowed to the effect that the defendant might " go to the jury upon the question of fact whether, under all the circumstances testified to, Warner & Bradley were held out by apparent authority to be the agents of O'Brien, and authorized to sign the contract of October 24th."

In response to that request the court observed : " I think that is a question of fact to be submitted to the jury."

Perhaps if the court had not circumscribed the rights of the defendant, further questions might have been presented by him for the consideration of the jury.

We are of the opinion that the evidence does not warrant the verdict, and by reason thereof, as well as for the errors which we have pointed out, we think there should be a new trial.

All concurred.

Judgment and order reversed and a new trial ordered, with costs to the appellant to abide the event.