(97 App. Div. 244.)

GERMAN–AMERICAN BANK OF ROCHESTER v. CUNNINGHAM.

(Supreme Court, Appellate Division, Fourth Department. September 27, 1904.)

1. NEGOTIABLE INSTRUMENTS—BONA FIDE HOLDER—DIVERSION—BURDEN OF PROOF.

Negotiable Instruments Law (Laws 1897, p. 733, c. 612) § 98, provides that every holder is deemed prima facie to be a holder in due course until it is shown that the title of the person who negotiated the instrument is defective, when the burden is on the holder to prove that he, or some person under whom he claims, acquired title as a holder in due course. And section 94 (page 732), declares that the title of a person who negotiates an instrument is defective when he obtains the instrument by fraud, or when he negotiates it in breach of faith, or under such circumstances as amount to fraud. Held, that where the maker of a note sued on by an indorsee testified that it had been negotiated in violation of an agreement under which it was given, such negotiation constituted a breach of faith amounting to fraud on the maker, and required proof on the part of the holder, before a recovery could be had, that the note was received in the ordinary course of trade, for a valuable consideration, and without knowledge of such agreement.

2. SAME—TRIAL—DIRECTION OF VERDICT—REQUEST BY BOTH PARTIES—EFFECT —APPLICATION TO GO TO JURY.

Where, in an action on a note by an indorsee, the maker alleged that the same had been wrongfully diverted by the payee, and the proof on such issue was conflicting, the making of a motion by both parties for a directed

verdict did not constitute such a submission of the whole case to the court as to entitle it, on the denial of defendant's motion, to refuse defendant's application to go to the jury on specified questions of fact.

Appeal from Trial Term, Monroe County.

Action by the German-American Bank of Rochester against Charles E. Cunningham. From an order setting aside a verdict in favor of plaintiff and granting a new trial on the minutes, plaintiff appeals. Affirmed.

Among other things said order recites: "Ordered that the said verdict be, and the same is hereby, set aside, and a new trial of this action be, and the same is hereby, granted, upon the ground that the questions of fact ought to have been submitted to the jury. This motion is granted solely upon the ground stated, and because said presiding justice had no power to take said case from the jury and direct a verdict in favor of the plaintiff, and it is not granted as a matter of discretion, or on account of any of the other grounds specified in section 999 of the Code of Civil Procedure." The action was commenced on the 4th day of April, 1903, to recover the amount of two notes, with interest—one for $2,000, bearing date January 12, 1898; and the other for $1,300, dated February 4, 1898—each signed by the defendant, Charles E. Cunningham, and made payable on demand to the order of his wife, Mary E. Cunningham, indorsed by her, and delivered to the plaintiff bank, which claims to be a "holder in due course" of the same. The defendant, by his answer, denied that the plaintiff was a "holder in due course" of the notes; alleged they were obtained by duress and fraud, and without consideration; also that they were delivered by him to his wife conditionally, and only pursuant to an agreement, in effect, that title should not vest in her unless a certain tontine policy of insurance issued upon his life, in which she was named as beneficiary, should become payable by reason of his death before the expiration of the tontine period; that, such contingency not having arisen, she acquired no title which, under the circumstances, she could legally transfer, and that her transfer to the plaintiff constituted a diversion of the notes. The defendant also set up several alleged counterclaims, and insists that any defense was available to him as against the plaintiff which would have been available if the action had been brought by his wife. At the close of the evidence each side moved for a direction of a verdict in his favor; the defendant upon the ground that the plaintiff, as matter of law, had failed to make out a cause of action. The court having announced its decision granting plaintiff's motion for a direction of a verdict in its favor, the defendant requested that certain specified questions of fact be submitted to the jury. Such request was denied, and a verdict directed as above stated. The questions presented by this appeal are: Is the plaintiff a "holder in due course" of the notes in suit as matter of law, and therefore entitled to recover, irrespective of any equities which might exist between the maker and payee? If not, does the evidence present an issue of fact, which, if determined favorably to the defendant, would constitute a defense to plaintiff's claim either in whole or in part? Was the defendant, under the circumstances disclosed by the record, entitled to have all material questions of fact determined by the jury notwithstanding he made a motion that a verdict be directed in his favor?

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

Porter M. French, for appellant.
Eugene Van Voorhis, for respondent.

McLENNAN, P. J. Upon the trial the plaintiff produced the two promissory notes described in the complaint, proved their indorsement by Mary E. Cunningham, the payee, and, the signature of the defendant, the maker, having been admitted, introduced them in evidence, and rested. Thus the plaintiff established prima facie that it became the

owner of the notes before they were overdue, in good faith, and for
value, and without notice of any infirmity in the instruments, or defect
in the title of the person negotiating the same.   Negotiable Instruments
Law (Laws 1897, pp. 730–732, c. 612) §§ 75–91.   Thereupon the pre-
sumption arose that the plaintiff held said notes "free from any defect
of title of prior parties, and free from defenses available to prior par-
ties among themselves," and that it was entitled to enforce payment of
the instruments for the full amount thereof against all parties liable
thereon.   Negotiable Instruments Law (Laws 1897, p. 732, c. 612)
§ 96.   These, however, are only presumptions, and may be rebutted.
"The burden of making out good faith is always upon the party assert-
ing his title as a bona fide holder in a case where the proof shows that
the paper has been fraudulently, feloniously, or illegally obtained from
its maker or owner.   Such a party makes out his title by presumptions
until it is impeached by evidence showing the paper had a fraudulent
inception, and when this is done the plaintiff can no longer rest upon
the presumption, but must show affirmatively his good faith." . Cana-
joharie Bank v. Diefendorf, 123 N. Y. 206, 25 N. E. 402, 10 L. R. A.
676.   The law as thus laid down by the Court of Appeals is substan-
tially embodied in the Negotiable Instruments Law (Laws 1897, p.
733, c. 612).   Section 98 provides:

"Every holder is deemed prima facie to be a holder in due course, but when
it is shown that the title of any person who has negotiated the instrument
is defective, the burden is on the holder to prove that he or some person un-
der whom he claims acquired title as a holder in due course."

Section 94 provides:

"The title of a person who negotiates an instrument is defective within the
meaning of this act when he obtains the instrument by fraud, * * * or
when he negotiates it in breach of faith or under such circumstances as amount
to fraud."

It is well settled that, if a note has been diverted or negotiated in
violation of an agreement under which it was given, such negotiation
constitutes a breach of faith, amounts to a fraud upon the maker, and
when that fact appears the holder cannot recover upon it against the
maker without showing that he received it in the ordinary course of
trade for a valuable consideration and without knowledge of such agree-
ment.   American Exchange Bank v. New York Belting & Packing
Co., 148 N. Y. 698, 43 N. E. 168.   The evidence shows that the defend-
ant, the maker of the notes, and Mary E. Cunningham, the payee, were
husband and wife, and at all the times in question resided together in
the city of Rochester, N. Y., where the plaintiff bank is located.   The
relations between them were not harmonious, resulting principally on
account of money matters and the alleged inadequate provision made by
the husband for the support and maintenance of his wife and children.
He, however, claims that he had made abundant provision for that
purpose, even to such extent as to cause him serious financial embar-
rassment.   At all events, early in January, 1898, the defendant applied
to the plaintiff for a loan of $5,500, and offered to assign to it as security
a 15-year tontine life insurance policy which had been issued upon his
life by the Northwestern Life Insurance Company for $10,000, having
only about 14 months of the tontine period to run, and which was pay-

able to his wife in case of his death before the expiration of such period, but in case he survived the expiration of such period it was payable to him or to his assigns. The defendant had paid all the premiums falling due upon the policy, and its estimated value at the time was between $6,500 and $6,600. The plaintiff agreed to loan to the defendant the money asked for, but only upon condition that he would procure his wife to join with him as maker of a note for the amount, and also in the execution of an assignment to it of the insurance policy as collateral security to the payment of such note. Thereupon the defendant had an interview with his wife, at which concededly no officer of the plaintiff was present, and requested her to join with him in executing such note and assignment. According to his version, she at first refused, but finally agreed to do so provided he would cause to be placed to her credit in the plaintiff bank $3,500 of the proceeds of the note; that at the time his financial condition was such that he was obliged to accede to her demand, which he did, whereupon she executed the note and assignment, which he delivered to the plaintiff, and caused to be placed to her credit the said sum of $3,500. Thereafter, and on or about the 4th day of February, 1898, the defendant, being in great need of more money, persuaded his wife to let him have $1,300 of the $3,500 deposited to her credit. In March or April following the two notes in suit were given, and were antedated to the dates they bear—the 4th of February, 1898, being the time when the defendant received the $1,300, and January 12, 1898, the date when he obtained the $5,500 from the bank, being $2,000 in excess of what he deposited to his wife's credit. He testifies, in substance, that some time after the loan had been made his wife insisted that she ought to receive or be secured for the full amount which was obtained upon the assignment of the policy, for the reason that, if he should die before its maturity, she could not recover the amount advanced; that he at first refused to comply with her demand, but that she "pestered him" so that he finally acceded, and gave her the notes in suit; that it was understood between them they were given solely to protect his wife in case of his death before the expiration of the tontine period. He testified that after such time elapsed and subsequently he demanded. the notes from his wife, but she at all times refused to surrender the same. It does not appear when the notes came into the possession of the plaintiff, or whether or not they were in the possession of the payee at the expiration of the tontine period of the policy, and when the demands for their return were made. Defendant's wife, who was called as a witness on behalf of the plaintiff, testified, in substance, that she signed the $5,500 note and executed the assignment of the insurance policy upon the express agreement that she was to have all the proceeds; that the notes in suit were given to her in pursuance of that agreement, which was voluntarily entered into by the defendant, and without any fraud or duress on her part; and, in effect, that upon their delivery to her she became the absolute and unconditional owner of the same for full value.

The evidence, interpreted most favorably to the defendant, wholly fails to establish that the notes in suit were obtained by duress, and the undisputed facts show that there was ample consideration for their execution and delivery by the defendant to his wife. By the terms of

the policy of insurance which Mary E. Cunningham joined in assigning
to the plaintiff, she was named as sole beneficiary. In case the defend-
ant had died within 14 months—the time between the date of the as-
signment and the expiration of the tontine period—she would have been
entitled to receive the full amount of such insurance. The value of the
policy at the time of the assignment was in excess of $6,500, and her in-
terest in it to the extent of $5,500, which was, of course, contingent, she
parted with; the defendant says solely in consideration of there being
placed to her credit $3,500 of the proceeds of the loan, which was
done. Such transaction, if not the result of duress or fraud, was clearly
legal; and the suggestion, even if true, that $3,500 was in excess of the
then actual value of the wife's contingent interest, is unimportant. She
had a right to sell such interest for the highest price obtainable. Ac-
cording to the defendant's own version, after such agreement had been
consummated, he sought to obtain from his wife $1,300 of the amount
deposited to her credit; that she then insisted she ought to have had the
full amount realized upon the policy, viz., $2,000, in addition to what
had already been paid to her; and that she refused to advance the
$1,300 which he asked for unless he made provision for the payment
to her of the said $2,000 in addition to the $1,300; that he acceded to
her demand, executed and delivered to her the notes in question, and
received from her the $1,300 which he desired. An adequate con-
sideration for the notes was thus proven. The wife had a perfect right
to refuse to let the defendant have the $1,300 asked for, or only upon
condition that he secure to her what she claimed she was justly en-
titled to because of the prior transaction; so there is no basis for the
suggestion, even upon the defendant's own showing, that the notes were
given without consideration.

We have seen the proof was conflicting, and raises an issue of fact
as to whether or not the notes in question were "diverted." In case such
issue had been determined adversely to the plaintiff, it could not have
relied upon the presumption that it was a "holder in due course," but,
in order to recover, would have been compelled to establish it by affirm-
ative evidence. It made no such proof, and in no manner eliminated
such issue. The defendant's counsel asked to have the question as to
the diversion of the notes submitted to the jury. The court denied the
request, evidently for the reason that he had moved for the direction
of a verdict. If by making such motion the court was authorized to
decide all questions of fact notwithstanding the request that they be
determined by the jury, the direction of the verdict does not present
reversible error, for there is ample evidence to support the conclusion
that the notes were not diverted, were not given conditionally, and that
Mary E. Cunningham, upon delivery to her, became the absolute owner
of the same for full value. The defendant, by moving for the direc-
tion of a verdict in his favor, having asked to go to the jury upon speci-
fied questions of fact immediately upon the making of a like motion
made by the plaintiff, did not thereby authorize the court to decide such
questions of fact, and thereby lose his right to have the same passed
upon by the jury. Undoubtedly, the general rule is that a request by
both parties for the direction of a verdict amounts to a submission of
the whole case to the trial judge, and his decision upon the facts has

the same effect as the verdict of a jury.    Adams v. Roscoe Lumber Co., 159 N. Y. 180, 53 N. E. 805; Trimble v. N. Y. C. & H. R. R. R. Co., 162 N. Y. 84, 56 N. E. 532, 48 L. R. A. 115; Persons v. Hawkins, 41 App. Div. 171, 58 N. Y. Supp. 831. Such rule, however, does not obtain where the party whose request is denied asks to go to the jury upon questions of fact which he specifies. Koehler v. Adler, 78 N. Y. 287. In that case the rule is stated in the headnote as follows:

"It seems that where, at the close of the evidence upon a jury trial, both parties ask the court to direct a verdict in their favor, respectively, it will be assumed that they intend to waive the right to submission to the jury, and consent that the court shall decide the questions of law and fact involved. But this presumption is repelled where the party whose request is denied thereupon asks to go to the jury upon the questions of fact."'

In Bernheimer v. Adams, 70 App. Div. 114, 75 N. Y. Supp. 93, both parties moved for the direction of a verdict. The court announced its decision granting the plaintiff's motion. The defendant then moved to go to the jury upon questions of fact which he specified, and it was held the request was timely made. Hogan v. O'Brien, 29 App. Div. 59, 51 N. Y. Supp. 530. In the case at bar not only did the learned counsel for the defendant insist that all questions of fact should be submitted to the jury in case his motion for the direction of a verdict was denied, but it is apparent from the recital in the order appealed from the learned trial judge did not intend to pass upon or decide any questions of fact. It is evident when the court directed the verdict he did not consider any issue of fact was presented by the evidence which, even if determined in defendant's favor, would be available to him as a defense. In this, we think, the court was in error, and therefore the order setting aside the verdict and granting a new trial was properly made.

It is unnecessary to discuss the evidence relating to the alleged counterclaims of the defendant. If upon a new trial it shall appear the notes were not diverted, as testified to by the payee, or that the plaintiff is in fact a holder in due course of the same, such counterclaims will not be available as against the plaintiff. If, upon the other hand, it shall appear the plaintiff is not a holder in due course, then any defense or counterclaim will be available to the defendant precisely as if the action had been brought against him by his wife.

It follows that the order appealed from should be affirmed, with costs. All concur.