(142 App. Div. 569.)

EISENBERG et al. v. LEFKOWITZ.

(Supreme Court, Appellate Division, First Department.     February 3, 1911.)

1. PATENTS (§ 196*)—SALE OF PATENT RIGHTS—FRAUD—EVIDENCE.
     In an action on a note given as part payment of the price of a patent right, evidence *held* insufficient to show fraud on the part of the vendor, invalidating the sale.
     [Ed. Note.—For other cases; see Patents, Cent. Dig. § 278; Dec. Dig. § 196.*]

2. PATENTS (§ 196*) — SALE OF PATENT RIGHTS — FRAUD — EXPRESSION OF OPINION.
     In an action on a note given as part payment of the purchase price of a patented lamp, representations by the vendor that the lamp was a great advertising article, and there was considerable money to be made out of it, was a mere expression of opinion, and was insufficient to constitute a defense to the note.
     [Ed. Note.—For other cases, see Patents, Cent. Dig. § 278; Dec. Dig. § 196.*]

3. BILLS AND NOTES (§ 537*)—BONA FIDE PURCHASERS—QUESTION FOR JURY.
     In an action on a note, evidence *held* insufficient to present a question for the jury as to whether plaintiff was a bona fide purchaser of the note.
     [Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 1879; Dec. Dig. § 537.*]

4. BILLS AND NOTES (§ 497*)—FRAUD—BONA FIDE PURCHASERS—BURDEN OF PROOF.
     Where there was fraud at the inception of a note, a subsequent holder has the burden of proving that he was a bona fide holder for value before maturity.
     [Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 1676; Dec. Dig. § 497.*]

5. TRIAL (§ 140*)—QUESTION FOR JURY—TESTIMONY OF PARTY—CREDIBILITY.
     Generally the credibility of a witness who is a party to the action and therefore interested in its result is for the jury, but this may not be true where the evidence of the party is not contradicted by direct evidence nor

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date. & Rep'r Indexes

by any legitimate inferences from the evidence, and is not opposed to the probabilities, nor in its nature surprising or suspicious.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 335; Dec. Dig. § 140.*]

Laughlin and Dowling, JJ., dissenting.

Appeal from Trial Term, New York County.

Action by Harry Eisenberg and another against Hyman B. Lefkowitz. From a judgment for plaintiffs, defendant appeals. Affirmed.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, MILLER, and DOWLING, JJ.

Selig Edelman, for appellant.

Abraham Landau, for respondents.

INGRAHAM, P. J. The plaintiffs in this action sue to recover upon a promissory note made by the defendant Lefkowitz, payable to the order of the defendant Lazarus, and indorsed by Lazarus to the order of the plaintiffs. This note was dated the 14th of September, 1909, and was payable on March 14, 1910, at the Corn Exchange Bank. The defendant, Lefkowitz, admitted the making of the note, and denied the payee, Lazarus, indorsed the note and for value transferred the same so indorsed to the plaintiffs, and as a separate defense alleged that on the 14th of September, 1909, the defendant Lazarus wrongfully and unlawfully, and with the intent and purpose to cheat and defraud the defendant, Lefkowitz, made certain false and fraudulent representations to the defendant, Lefkowitz, relying on which the note was executed and delivered.

Upon the trial the plaintiffs produced the note which was admitted in evidence, and one of the plaintiffs was called as a witness, and testified that on or about March 5, 1910, he received this promissory note from Harry E. Lazarus and paid him $2,000 for it. Upon cross-examination, he stated that in the latter part of February, 1910, Lazarus came to the witness and told the witness that he was just embarking in the rain-coat business, and was short of funds, and asked the witness to help him out, and buy a note from him, which the witness agreed to do; that the witness then investigated the credit of the maker of the note, and, being satisfied with the report received, he purchased the note, giving Lazarus a check for it, which check was produced and offered in evidence. He also produced his check book to show that the check was paid. He further testified that he gave Lazarus the check on March 5, 1910, that the witness bought the note for the plaintiffs in the action, and it was indorsed to them by Lazarus, the payee.

Upon this testimony the plaintiffs rested, when the defendant, Lefkowitz, was called as a witness. He testified that he had a conversation with Lazarus in August, 1909, and was shown in his place of business a certain patented advertising device which was the invention in question; that Lazarus demonstrated it in his place of business, and the witness decided to go into the matter; that Lazarus had demonstrations outside to test the article, and that the witness and Lazarus

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

drew up an agreement on September 14, 1909, and before the agree-- ment was drawn up Lazarus showed the plaintiffs various orders that he was receiving from people for this article; that they had sold many of the lamps at a good substantial profit; that the lamp was a great advertising article, and there was considerable money to be made in it, but Lazarus had a very large venture to go into, and that he could not agree with his officers in the corporation; that the other matter was so large that it required his concentrated time, and he was compelled to give up his patent for the interest in the thing he was going into; that he showed the defendant the merits of the article, and said that the lamp would stand for an indefinite period; that it would give satisfaction to the purchasers, and which he tried to show by checks that he was getting in from people that wanted the lamp, and that it could not fail. The defendant further testified that Lazarus said that the invention was absolutely perfect, and that other inventions required a lot of experimental work, but that this thing was all ready to go in the market, and that he had stock on hand already made that he would turn over to the defendant; that relying upon these representations, and believing them to be true, he went into the deal with Lazarus, gave him $2,500 in cash and a note payable in six months for $2,500, and at that time got from Lazarus a bill of sale; that, after receiving the bill of sale, the defendant engaged salesmen to sell these lamps and put the lamps in stores for the purpose of testing them, and that, after they burned for a night or two, the defendant was ordered to remove them because they were defective; that the lamp would only burn from 12 to 16 hours, and after that the lamp would get so black that nothing would be visible on the sidewalk except a very faint illegible matter that no one could read, and therefore it was totally worthless; that there were about a dozen lamps returned to the office by customers that bought them from the lamp company before the defendant took possession; that the defendant talked to Lazarus in the early part of February, when the defendant offered to return to Lazarus the invention, and Lazarus said that he would do the best he could to help the defendant out. The defendant also called the inventor of these lamps, and sought to prove a conversation with Lazarus about the manufacture of the lamps in 1908. This was objected to; the objection sustained; exception. Another witness was called who introduced Lefkowitz to Lazarus. He was asked as to conversations between Lazarus and the defendant prior to the time of the transfer; but this testimony was objected to by the plaintiffs and excluded, and the defendant excepted. After the evidence was all in, the plaintiffs moved to strike out all evidence in reference to the conversations had between Lazarus and the defendant. This motion was granted, and the defendant excepted, and the court then directed a verdict for the plaintiffs for the amount of the note, and from the judgment entered upon that verdict the defendant appeals.

I think it doubtful whether the evidence was sufficient to support a verdict that there was fraud in the transaction which resulted in the sale of this patent to the defendant, which was a valid defense to the note given as a part of the purchase price. The allegation of fraud

contained in the answer is much broader than was sustained by the evidence. Lazarus' representations were rather expressions of opinion as to the value of the invention and the profits to be derived from the sale of the patented article then representations of a fact which was proved to be false and fraudulent. There was no evidence that Lazarus had not sold a great many of these lamps, and that they had not given satisfaction to the purchasers. Nor is there any satisfactory evidence that the lamps did not burn indefinitely. The only evidence is that lamps that the defendant had installed were returned to him upon the ground that they became black or discolored, and were not satisfactory. It is clear enough that the defendant, listening to Lazarus' rather exaggerated idea as to the value of the invention and the business which would result from the introduction of these lamps, had purchased the invention, and that it was not subsequently successful, but whether this resulted from any defect in the lamp itself, or for any other reason, does not clearly appear. Assuming, however, that there was evidence to submit to the jury upon the question of Lazarus' fraud in the sale of this patent, the plaintiffs were entitled to enforce the note if they were bona fide holders for value before maturity. One of the plaintiffs was examined and proved the purchase of the note some 10 days before it became due; proved that he paid $2,000 for it; produced the check paid for the note, and stated in detail the conversation between himself and Lazarus at the time he purchased the note. His testimony was not questioned. Nothing transpired which tended to contradict or impeach it, and it was received by the court and apparently by counsel for the defendant without question. The defendant introduced evidence to sustain the defense that Lazarus acquired the note by means of false and fraudulent representations; but introduced no evidence that contradicted or questioned the evidence of the plaintiffs as to the purchase of the note. Upon the evidence as it appeared in the record, it is quite clear that a verdict of the jury that the plaintiffs were not bona fide holders for value before maturity would have been reversed as clearly without evidence to support it. It is undoubtedly true that, where there is fraud between the original parties to a promissory note, the burden is on the subsequent holder of the note to prove that he was a bona fide holder for value before maturity. That burden the plaintiffs assumed as a part of their case, and they proved the purchase of the note before maturity for a valuable consideration, and proved the transaction as between the payee of the note and the plaintiffs which resulted in the purchase. No question was asked by the defendant of the plaintiff who was examined as a witness as to his relations with Lazarus, or as to his knowledge of the relations between the defendant and Lazarus which resulted in the giving of the note in suit. From the nature of these relations between the defendant and Lazarus, it is difficult to see how the plaintiffs could have had notice of them, or been charged with any knowledge of the consideration for which the note was given, and I think the evidence established the fact that the plaintiffs were bona fide holders of the note for value before maturity and without notice of any defect.

Section 95 of the negotiable instrument law (chapter 43, Laws 1909 [Consol. Laws, c. 38]) provides that:

"To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

Section 96 of the negotiable instrument law provides that:

"A holder in due course holds the instrument free from any defect of title of prior parties and free from defenses available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon."

Cheever v. Pittsburgh R. R. Co., 150 N. Y. 59, 44 N. E. 701, 34 L. R. A. 69, 55 Am. St. Rep. 646, seems to be a case very much like the case at bar. It was there said:

"The holder's rights cannot be defeated without proof of actual notice of the defect in title or bad faith on his part evidenced by circumstances. Though he may have been negligent in taking the paper, and omitted precautions which a prudent man would have taken, nevertheless, unless he acted mala fide, his title, according to settled doctrine, will prevail."

Further speaking of the purchaser of a note before maturity and for value, it is said:

"He had a right to assume that the relations to the paper of every party whose name appeared on it were precisely what they appeared to be. He had the right to believe that the notes had been issued by the defendant Bruen for value in the regular course of business, and were by him transferred to Frost & Son in like manner. * * * It is quite true that all these appearances were deceptive, and that the actual facts were otherwise. But how was a banker or business man in Boston to know or suspect that Bruen was only the nominal payee and a mere instrument in the transaction to enable the president to divert paper to his own use."

It is claimed, however, that proof of the purchase of the note by the plaintiff was the testimony of one of the plaintiffs, and therefore the defendant was entitled to have the question of the plaintiffs' bona fides submitted to the jury. Here, however, all the testimony as to the actual payment of money by the plaintiffs and the actual conversation that took place at the time it was purchased by the plaintiffs was brought out on cross-examination by the defendant. The check was produced which conclusively established that at the time of the purchase of the note $2,000 was actually paid to the payee of the note. There was not a circumstance disclosed which justified a suspicion that the plaintiffs did not actually pay to Lazarus $2,000, that the note was not actually transferred to him at that time, or that the plaintiffs had any knowledge of the transaction between Lazarus and the defendant. Under such circumstances I think the rule stated in Second Nat. Bank v. Weston, 172 N. Y. 250, 64 N. E. 949, applies. It is there said:

"The further contention is made by the respondent that as the circumstances attending the discount of the note were proved by the testimony of the cashier, who was also a stockholder in the plaintiff, he was an interested witness and his credibility presented a question of fact for the jury, or in this case, as there was no request to go to the jury, for the court, to pass upon. The rule invoked by the respondent is not of universal application."

And the court then quotes from Hull v. Littauer, 162 N. Y. 569, 57 N. E. 102:

"Generally, the credibility of a witness, who is a party to the action, and therefore interested in its result, is for the jury; but this rule, being founded in reason, is not an absolute and inflexible one. * * * Where, however, the evidence of a party to the action is not contradicted by direct evidence, nor by any legitimate inferences from the evidence, and it is not opposed to the probabilities, nor, in its nature, surprising or suspicious, there is no reason for denying to it conclusiveness."

Considering all the facts proved and the legitimate inferences to be drawn from them, and the failure of any attempt to contradict these facts or impeach the witnesses, I think the fact of the plaintiffs being bona fide holders for value was established by uncontradicted evidence, and the court was therefore correct in striking from the record the testimony of the arrangement between the maker of the note and the payee.

It follows that the judgment appealed from must be affirmed, with costs.

CLARKE and MILLER, JJ., concur.

LAUGHLIN, J. (dissenting). This is an action on a promissory note made by the appellant on the 14th day of September, 1909, for $2,500, payable on the 14th day of March thereafter, without interest, to the order of one Lazarus. The defense interposed by the answer was that the note was given in part payment of the purchase price of certain advertiscope lamps and the patent therefor, and that the purchase thereof was induced by false and fraudulent representations made by Lazarus to the appellant, and that plaintiffs were not bona fide holders. The plaintiffs showed on their affirmative case by the testimony of the plaintiff Settel that, representing his firm, he purchased the note from Lazarus on the 5th day of March, 1910, nine days before it became due, and paid therefor by a check the sum of $2,000; that he had been acquainted with Lazarus for about 10 years, and knew that he was in the advertiscope lamp business, and, as he understood it, was connected with the Advertiscope Lamp Company; that Lazarus came to him the latter part of February, 1910, and stated that he "was just embarking in the rain-coat business, or he is embarking in the rain-coat business, and he is short of funds," and that he wanted to sell a note and asked if the witness could not help him out by buying it, which the witness says, "I agreed to do," and thereafter, and on the 5th day of March, 1910, Lazarus presented the note and Settel purchased it as stated, but, before doing so, he obtained a financial report on appellant, whom he did not know; that the firm owed one Aaron Eisenberg on a "savings account," and the note was credited to the firm on that account and delivered to Eisenberg, who returned it on the 10th day of the same month for the reason that he did not desire to hold it, and the credit was then canceled. The defendant gave evidence tending to show that he was induced by false and fraudulent representations made by Lazarus to purchase the lamp and the patent therefor for the sum of $5,000, $2,500 of

which was paid in cash, and that the note was given for the balance. The court frequently ruled during the trial that it was incumbent upon the defendant to show that the plaintiffs were not holders of the note in due course and for value, and the correctness of such ruling does not appear to have been directly questioned. No express evidence imputing knowledge of the circumstances under which the note was given to the plaintiffs having been introduced, the court, when defendant rested his case, struck out all the evidence introduced by the defendant, to which an exception was duly taken, and thereupon granted the plaintiffs' motion for the direction of a verdict.

I am of opinion that the learned trial justice erred in thus ruling and in striking out the evidence. Section 95 of the negotiable instruments law provides that, to constitute notice of an infirmity in a negotiable instrument or a defect in the title of the person negotiating the same, "the person to whom it is negotiated must have had knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith." This statutory declaration of the law, however, as I understand it, affects the numerous decisions of the courts holding that when the defendant shows that a negotiable instrument on which he is sued has been diverted, or that he was induced to execute it by fraud, the burden is shifted to the plaintiff to show that he received the same without notice of the facts constituting the infirmity in the instrument. Vosburgh v. Diefendorf, 119 N. Y. 357, 23 N. E. 801, 16 Am. St. Rep. 836; Canajoharie National Bank v. Diefendorf, 123 N. Y. 191, 25 N. E. 402, 10 L. R. A. 676; Joy v. Diefendorf, 130 N. Y. 6, 28 N. E. 602, 27 Am. St. Rep. 484; Smith v. Weston, 159 N. Y. 194, 54 N. E. 38; Citizens' Nat. Bank v. Weston, 162 N. Y. 113, 56 N. E. 494; German-American Bank v. Cunningham, 97 App. Div. 244, 89 N. Y. Supp. 836; Second Nat. Bank v. Weston, 172 N. Y. 250, 64 N. E. 949. Here the court having struck out the evidence showing that the defendant had a good defense as against the payee of the note, of course, there was no evidence in the case which the plaintiffs were called upon to meet. The plaintiffs did not on their affirmative case show in detail the facts with respect to the purchase of the note. It does not appear whether or not Lazarus offered to sell the note for the amount at which it was purchased, or whether that was an offer on the part of the plaintiffs; nor does it appear whether or not the plaintiffs were informed of the circumstances under which the note was given or the consideration for which it was given. If they had knowledge of the fraud perpetrated on appellant by Lazarus, there could be no recovery. The mere fact that they purchased the note at such a large discount so near its maturity, in the absence of evidence showing that funds were urgently needed by Lazarus, is a strong circumstance against their bona fides; but perhaps standing alone it would not be sufficient to defeat a recovery.

DOWLING, J., concurs.