ASRIEL COOPERSMITH, Appellant, *v.* WILLIAM C. MAUNZ, Respondent.

ASRIEL COOPERSMITH, Appellant, *v.* CHRISTOPHER J. RASP, Respondent.

Fourth Department, November 7, 1929.

*Frank Gibbons*, for the appellant.

*Charles P. Penney*, for the respondents.

SEARS, P. J.   The facts and the questions of law involved in the two actions, so far as these appeals are concerned, are identical. A certain corporation known as the Otis Oil Burner Corporation secured from these defendants acceptances of certain instruments, in writing, of one of which the following is a copy:

" TRADE ACCEPTANCE

"Acceptance Number No. 1      NEW YORK, N. Y. *Sept.* 30, 1925

" To CHRISTOPHER J. RASP, P. O. 1784 Genesee St. Buffalo, N. Y.

" Sixty days after date pay to the order of ourselves at New York, N. Y., the sum of . . . two hundred . . . dollars.

"Accepted at Buffalo, N. Y. On Sept. 30, 1925.

" Payable thru Liberty Bank of Buffalo.

" Firm C. J. Rasp

" The obligation of the acceptor hereof arises out of the purchase of goods from the drawer.

" OTIS OIL BURNER CORP.

" B. M. AMESWORTH,

" *Genl. Mgr.*"

All of the instruments were in the same form, except as to number, name and address of drawer and acceptor, amount, and dates of instrument of acceptance and of maturity.   The verdicts of the jury establish that the acceptances by the respective defendants were obtained by the Otis Oil Burner Corporation through fraud. These instruments so accepted were indorsed by the Otis Oil Burner Corporation and purchased from that company by the plaintiff before maturity, the plaintiff paying for them seventy-five per centum of their face in cash and agreeing to pay fifteen per centum more when these and a large number of other similar acceptances purchased at the same time and on the same terms had been paid to the plaintiff in full.   The plaintiff himself testified that he had no knowledge whatever of any infirmity in the instruments or of any defect in the title of the Otis Oil Burner Corporation, when he made the purchase.

Two principal questions are presented by these appeals: *First*, were the instruments negotiable? and, *second*, did the learned trial court err in charging the jury in substance that if at the time that the plaintiff bought these instruments the circumstances were such that he had information or knowledge which would put a reasonably prudent man on his guard to make investigation or inquiry, it was

then the plaintiff's duty to do so, and that if he failed to do so he was chargeable with knowledge of all facts that such an inquiry would have revealed if he had made it?

The defendants contend that the instruments were not negotiable because of the words " the obligation of the acceptor hereof arises out of the purchase of goods from the drawer " appearing on the face of each. These words, they say, are more than " a statement of the transaction which gives rise to the instrument " which is expressly permitted by subdivision 2 of section 22 of the Negotiable Instruments Law without destroying the negotiability of the instrument, for they embody the assertion not that the instrument on which they appear arose out of the purchase, but that the obligation of the acceptor so arose. Consequently, it is argued that the contract of purchase, being the immediate source of the obligation is an essential element of the obligation and the written instrument is only a part of the contract. Therefore, it is contended that the order to pay is not unconditional. Authority for this position is found in *Lane Co.* v. *Crum* (291 S. W. 1084 [Tex. Com. App.]); *Harris* v. *Wuensche* (7 S. W. [2d] 595 [Tex. Civ. App.]); *Harris* v. *Bucek* (8 id. 565 [Tex. Civ. App.]); *Westlake Mercantile Finance Corp.* v. *Merritt* (—— Cal. ——; 269 Pac. 620). I do not so read the instruments. The words " obligation of the acceptor hereof," in my opinion, mean the obligation upon the acceptance itself and not the obligation upon the contract of purchase, and, consequently, the statement here involved is equivalent to a statement that the instrument upon which the acceptor is obligated by his acceptance, or, in other words, the trade acceptance itself, arose out of the purchase of goods. The order to pay is unconditional. The sentence under discussion is expressly covered by section 22 of the Negotiable Instruments Law. Ample authority for this view exists. (*Heller* v. *Cuddy*, 172 Minn. 126; 214 N. W. 924; *National Bank of Newbury* v. *Wentworth*, 218 Mass. 30; *Old Colony Trust Co.* v. *Stumpel*, 126 Misc. 375; affd., 219 App. Div. 771; affd., 247 N. Y. 538; *Merchants National Bank* v. *Santa Maria Sugar Co.*, 162 App. Div. 248; affd., 220 N. Y. 732; *Enoch* v. *Brandon*, 249 id. 263.) The instruments were negotiable.

The charge of the learned trial court referred to above is, however, in conflict with sections 94 and 95 of the Negotiable Instruments Law, which are as follows:

" § 94. When title defective. The title of a person who negotiates an instrument is defective within the meaning of this chapter when he obtained the instrument, or any signature thereto, by fraud, duress, or force and fear, or other unlawful means, or for an illegal consideration, or when he negotiates it in breach of faith, or under such circumstances as amount to a fraud.

" § 95. What constitutes notice of defect. To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."*

It is true that during the course of the charge these sections were read to the jury, but in explanation and amplification of the statutory provision the statement was made more than once that if the circumstances were such that a reasonably prudent person would have made inquiry, the plaintiff was chargeable with the knowledge of facts that such inquiry would have exposed. In other words, the charge as a whole left the question to the jury as one of care or negligence while the law in relation to negotiable instruments is such that an indorsee only has notice of an infirmity in the instrument or defect in the title of his indorser when he has actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking such instrument amounts to bad faith. To put the indorsee upon inquiry, therefore, it is not enough that the prudent purchaser would have made inquiry; the circumstances must have indicated infirmity or defect so strongly that a failure to inquire would import bad faith. To effect notice, negligence is not enough; dishonesty, bad faith, must exist. (*Dutch* v. *McMahon*, 219 App. Div. 203; *Carlisle* v. *Norris*, 215 N. Y. 400; *Cheever* v. *Pittsburgh, etc., R. R. Co.*, 150 id. 59.) For this error in the charge, which was brought sharply to the attention of the learned trial court by exception, the judgments must be reversed.

The appellant urges that the learned trial court erred in denying the plaintiff's motion to direct a verdict and that the complaint should now be dismissed. Considering, however, that the burden was upon the plaintiff to establish that he was a holder of the negotiable instrument in due course (Neg. Inst. Law, § 98), that his case in this respect depends largely upon his own testimony, and considering also what he knew of the Otis Oil Burner Corporation, the large amount of negotiable paper that he purchased, and the discount that he took, I am of the opinion that a question of fact was presented on this issue which must be determined by a jury.

The judgments and orders should be reversed on the law and new trials granted, with costs to the appellant to abide the event.

All concur. Present — SEARS, P. J., CROUCH, TAYLOR, THOMPSON and CROSBY, JJ.

In each case: Judgment and order reversed on the law and a new trial granted, with costs to the appellant to abide the event.

* Since amd. by Laws of 1927, chap. 473.— [REP.