ASRIEL COOPERSMITH, Appellant, *v.* WILLIAM C. MAUNZ, Respondent.

ASRIEL COOPERSMITH, Appellant, *v.* CHRISTOPHER J. RASP, Respondent.

Fourth Department, March 15, 1933.

*Gibbons & Pottle* [*Frank Gibbons* of counsel], for the appellant.

*Charles P. Penney* [*Alfred A. Buerger* with him on the brief], for the respondents.

CROSBY, J. These two actions were tried together by stipulation. Both cases are, so far as this appeal is concerned, governed by the same law and the same facts. The cases were tried once before and in that trial, as in the last trial, the jury gave defendants the verdict. The actions are brought upon trade acceptances issued by the defendants to the Otis Oil Burner Corporation, and, by the latter, negotiated and indorsed over to the plaintiff for value and before maturity. Judgments in favor of defendants, as a result of the first trial, were reversed by this court upon the ground that the trial court charged, in substance, that it was the duty of the plaintiff to make such inquiry as a careful man would make to learn whether there was any defect or infirmity in the trade acceptances before he purchased them. (*Coopersmith* v. *Maunz*, 227 App. Div. 119.)

Upon this trial, as upon the former, there was evidence to warrant the jury's finding that the trade acceptances were procured by the Otis Company from defendants by means of fraud. But, even so, the plaintiff, purchasing them for value and before maturity, could recover on them unless he " had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith." (Neg. Inst. Law, § 95.) This is so, because we held upon the former appeal (*Coopersmith* v. *Maunz, supra*) that the trade acceptances were negotiable paper.

Infirmity in the instruments having been proven by defendants the burden was cast upon plaintiff to prove that he was a holder

in due course. (Neg. Inst. Law, § 98.) Upon the former trial plaintiff testified that he had no knowledge such as is mentioned in section 95, and in this last trial he gave the same testimony and he is corroborated by two disinterested witnesses, Frankel and Korn. The question here is whether or not there is any evidence to the contrary sufficient to make a jury question upon the subject of plaintiff's knowledge of the kind mentioned. I am unable to find any such evidence in the record.

It must be conceded that plaintiff bought the paper at a large discount — ten per cent on paper payable in two months. This alone is not enough. (*Second National Bank* v. *Weston,* 172 N. Y. 250.) (See, also, *Eisenberg* v. *Lefkowitz,* 142 App. Div. 569.)

The only other evidence in the record that is even claimed to show that plaintiff was not a taker of the paper in due course, is his own admission that he hired an accountant to go through the books of the Otis Company, and that the books showed a weak financial structure, and that it was apparent that the company was doing a rather large business on too small a capital. Plaintiff also admitted, in substance, that he knew he was taking paper that would not be attractive to banks. I do not regard these facts as sufficient to put plaintiff in the light of a taker in bad faith.

Finding, in the record, no substantial evidence to dispute plaintiff's evidence that he took the paper in good faith, the judgment should be reversed on the law, with costs, and plaintiff's motion for a direction of a verdict for the amount demanded in the respective complaints should be granted, with costs.

All concur, except TAYLOR and THOMPSON, JJ., who dissent and vote for affirmance in an opinion by TAYLOR, J.

TAYLOR, J. (dissenting). I cannot join with the majority of the court in holding that this plaintiff should recover as a matter of law. On the appeal from prior judgments in favor of defendants we expressed the view that it was a fair jury question whether or not plaintiff had fulfilled his obligation (Neg. Inst. Law, § 98) to prove that he was a holder in due course (227 App. Div. 119, 122). I find nothing in the present record pointing to a different conclusion. The only additional testimony aiding plaintiff in this behalf is that of the witness Korn, and this testimony is of no material importance. The trade acceptances ran in series of three, becoming due in sixty, ninety and one hundred and twenty days. Plaintiff paid one hundred and fifty dollars for each two-hundred-dollar document; and when he received payment he retained twenty dollars for himself and paid thirty dollars into a " reserve fund "

held by himself for payment later to the Otis Corporation, payee and indorser of the trade acceptances, if not needed by plaintiff to cover losses occurring through defaults on the part of the Otis Corporation. Plaintiff was in the note brokerage business. He conceded on the trial that his profits were at the rate of forty, fifty-three and one-third and eighty per cent per year on the instant deals. He had ascertained upon an investigation, which for some reason he saw fit to make prior to his purchase of the securities, that the Otis Corporation was apparently doing an extensive business and taking in large sums of money; that exclusive of officers' salaries the corporation was making eight hundred per cent gross profit and three hundred per cent net profit on its sales and was paying its salesmen one hundred per cent commissions — but that its finances were in a decidedly shaky condition and its credit poor. Mere knowledge in plaintiff of the impecuniousness of the Otis Corporation would probably not alone have been sufficient to sustain a charge of bad faith. (*Baruch* v. *Buckley*, 167 App. Div. 113.) But all the information obtained by plaintiff, coupled with the willingness of the Otis Corporation to pay so heavily for the use of money, was not only enough to arouse the suspicion of a fair-minded man but sufficient to require him in the exercise of good faith to pursue his investigation already undertaken — to look into the business methods of the corporation. It should be further noted that plaintiff concedes that after the makers of several of the trade acceptances had failed to pay them when due plaintiff continued to buy paper from the Otis Corporation. Because of the large discounts obtainable by plaintiff on the purchase of these short term trade acceptances and the knowledge already obtained by him as to the corporation's business standing and financial condition, the connection between the business transactions had by that corporation with these defendants and similar customers and the issuing and delivery of the trade acceptances would under the circumstances sustain a finding that " by the simple test of honesty and good faith " (*Magee* v. *Badger*, 34 N. Y. 247, 249) it became the duty of plaintiff to inquire as to the real situation which had obtained between the Otis Corporation and these defendants. (*Kelso & Co.* v. *Ellis*, 224 N. Y. 528, 535.) Whether this plaintiff inquired " as to the real situation " sufficiently to manifest good faith — under all the circumstances presented — he having made some inquiries — was for the jury to say. (See, also, *Canajoharie Nat. Bank* v. *Diefendorf*, 123 N. Y. 191; *Vosburgh* v. *Diefendorf*, 119 id. 357; *Kittredge* v. *Grannis*, 244 id. 168, 178, 181; *Security Bank & Trust Co.* v. *Dery*, 194 App. Div. 572; *Harter* v. *Peoples*

*Bank of Buffalo,* 221 id. 122; 3 R. C. L., Bills & Notes, § 245, p. 1041.) Further investigation even to a small extent would have disclosed to plaintiff sales of unfit and unsatisfactory merchandise — and that the negotiable paper he was about to purchase was tainted with unfair dealing, with fraud. We are not concerned now with a case of breach of warranty subsequent to the negotiation of promissory notes, through which the transferee cannot be charged with bad faith. (*Tradesmen's Nat. Bank* v. *Curtis* 167 N. Y. 194; *Commercial Investment Trust, Inc.,* v. *Pearson,* 236 App. Div. 772.) Here, by pleading and ample proof, we have a basic fraudulent transaction and commercial paper, the signature to which, and the possession of which, were obtained by plaintiff's transferor by fraudulent means. It seems to me that the jury was correctly permitted to find that plaintiff's failure to search deeper after commencing his investigation showed not merely negligence but that — actuated by a desire to make some easy money unfairly and quickly — he proceeded in bad faith under circumstances compelling suspicion so grave as to require additional inquiry.

" The discount taken may be so great as to impeach the good faith of the purchaser, the same as a chattel may be bought at so much under its true value as to justify the inference that the purchaser knew or suspected that it had been dishonestly acquired by his vendor." (*Second National Bank* v. *Weston,* 172 N. Y. 250, 257.)

It is well stated in *Smathers* v. *Toxaway Hotel Co.* (168 N. C. 69), that it must be a very plain and conclusive case to justify taking such question of good faith from the jury *in favor of the party having the burden,* since credibility of the evidence adduced in support of the claim of want of knowledge of good faith is for the jury to decide, and, if they do not believe the evidence, the holder has failed to discharge the burden resting on him by the terms of the statute; and the verdict should therefore be against him unless there is other evidence or circumstances sufficient for that purpose; and whether there is the jury at last must also decide.

" If * * * the disclaimer of notice [of defect in the instrument] proceeds from an interested source and if there are circumstances in addition to arouse suspicion or incredulity, the jury and not the judge must say whether the burden of repelling notice has been adequately borne." (*New York Bankers, Inc.,* v. *Duncan,* 257 N. Y. 160, 165.)

I am advised of the general rule that business safety requires that the validity of genuine negotiable instruments should not be lightly questioned. But considering the parties involved — on

the one side a citizen cozened into incumbering his property for a grossly inadequate consideration; on the other side a " finance " man who closes his eyes readily to the actual and ascertainable facts for the sake of easily acquiring the unearned increment — and considering all the facts related — the court is going too far, in my judgment, to say that plaintiff's good faith was not a jury question. The jury was clearly warranted in finding that the title of plaintiff's transferor was defective. (Neg. Inst. Law, § 94.) This is hardly disputed. I find no error of material importance in rulings made by the learned trial court. The judgments should be affirmed.

THOMPSON, J., concurs.

In each case: Judgment reversed on the law, with costs, and judgment for the plaintiff granted for the amount demanded in the complaint, with costs.