HURST v. LEE.

(Supreme Court, Appellate Division, Second Department. March 10, 1911.)

1. BILLS AND NOTES (§ 103*)—RELIANCE ON REPRESENTATIONS.

The defense that notes given by defendant to a corporation in a settlement were procured by fraudulent representations of the corporation's president that certain articles had been shipped to defendant is not available; there being no evidence that defendant relied on the representations, but it appearing that he would not make the settlement without the personal guaranty of the president, which was given in writing, that everything had been shipped.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 233–240; Dec. Dig. § 103.*]

2. BILLS AND NOTES (§ 339*)—BONA FIDE PURCHASER.

One is not deprived of the right to recover on notes as a bona fide holder, where, for the purpose of helping his brother-in-law to the money, he purchased them 10 days before their maturity and paid the amount of their face, though they were noninterest-bearing, notwithstanding he made no inquiry into the circumstances out of which they arose, but relied on the representation of his brother-in-law that they were valid.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 821–823; Dec. Dig. § 339.*]

Appeal from Municipal Court, Borough of Brooklyn, Sixth District.

Action by Walter Hurst against Herman F. Lee. From a judgment for defendant, plaintiff appeals. Reversed, and new trial ordered.

Argued before JENKS, P. J., and HIRSCHBERG, THOMAS, CARR, and RICH, JJ.

MacIntosh Kellogg (Alfred C. Petts, on the brief), for appellant. Charles Adkins Baker, for respondent.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

THOMAS, J. This action is upon two notes, each for $200, given by defendant to the General Metals Manufacturing Company. The defense is that these notes and three others, all aggregating $1,000, were procured from the defendant upon a fraudulent representation made by Cook, the company's president, that certain goods and metals had been shipped by the company to the defendant, whereas, as alleged, such goods contracted to be delivered were not shipped or delivered. On November 14, 1906, the company agreed to manufacture and deliver to the defendant some 10,000 stapling tools at a specified price, and for the purpose of their manufacture defendant undertook to furnish and did furnish the company with tools and dies. Thereafter, in June, 1907, the company, through financial embarrassment, shut down its works, and after much negotiation an agreement was made between the parties for the return of the tools and dies and other material, for which defendant agreed to give and did give the five notes mentioned. This contract recites:

"Whereas, the party of the first part have on hand on their premises at Scranton, Penn., a quantity of steel parts as per schedule furnished, be the said quantities named on said schedule more or less, said schedule having been made in good faith and representing all the parts in possession of party of the first part at the time same was made, all of said parts going to make the pin stapling tool; and whereas, the said party of the first part also have in its possession at the same place all the special tools, dies, holders, etc., used in manufacturing said pin stapling tool: It is agreed that the party of the first part will sell, and the party of the second part will purchase, all of said materials and tools belonging to the said party of the first part for the sum of one thousand ($1,000.00) dollars, to be paid by five notes of $200.00 each, becoming due on the first days of October, November, and December, 1907, and January and February, 1908."

It was further agreed that performance of this contract should constitute a settlement of all the claims between the parties. Although the company's president represented that the tools had been shipped, the defendant would not make the settlement without the personal guaranty of Cook that everything had been shipped, which he did in writing. An inventory is returned, showing a very large number of items. Defendant gave evidence showing that some of the tools were not returned. There is no evidence that plaintiff relied upon the representation; but it rather appears that he did not rely thereon, but upon Cook's personal guaranty. Nor is there evidence that Cook knew that all the parts were not shipped. Indeed, the contract seems to indicate that he had made a good-faith attempt to return all that were at the shop, where the defendant had earlier been for the purpose of examining what was on hand. Hence the defendant has not made proof of elements necessary to sustain his defense of fraud.

It is inferable from the evidence that after the parts were received there were communications between defendant and the company, and that, in view of an expected defense to the notes, Cook transferred them to his brother-in-law, the plaintiff, with the indorsement of the company. This transfer was about 10 days before November 1, 1907. The notes were due severally on November 1 and December 1, 1907. Plaintiff, as he testified, paid $400 for the notes, relying upon the representation of Cook that the notes were good and would be paid at

maturity. He made no inquiry as to the transaction between the company and the defendant, and had no knowledge of the general condition of the company's business. Although he had discounted notes, he had not done so for a couple of years before the time in question. It is apparent that he relied upon the representation of Cook that the notes were valid, and that the purchase was for the purpose of helping his brother-in-law to the money. He paid full value for the notes, and, indeed, as they did not draw interest, he would be without the interest on his money between the time of the purchase and the maturity of the notes.

While it is inferable that Cook's intention was to place the notes in the hands of a bona fide holder, and so preclude a defense to them, it does not appear that plaintiff participated in such motive, or that he had any knowledge or information that there was any defect in the title of the notes, or any defense thereto. Had the defendant proved that the notes were obtained by fraud, the burden would have rested on the plaintiff to show that he was a bona fide holder; that is, he must show under what circumstances and for what value he purchased them. American Ex. Nat. Bank v. New York Belting, etc., Co., 148 N. Y. 698, 703, 43 N. E. 168; Vosburgh v. Diefendorf, 119 N. Y. 357, 365, 23 N. E. 801, 16 Am. St. Rep. 836. In the present case the plaintiff paid the amount of the face of noninterest-bearing notes, and so lost some days' interest. He is criticised for paying too much. In Canajoharie National Bank v. Diefendorf, 123 N. Y. 191, 25 N. E. 402, 10 L. R. A. 676, the purchaser was deemed to have paid too little. The circumstances in that case showed such gross neglect in avoidance of inquiry, such absence of usual banking methods and expectable conduct, and such blind and unauthorized confidence, that the transaction itself evidenced bad faith. In the case at bar there was lack of inquiry into the circumstances out of which the notes arose, but the purchaser had the assurance of the man who was bound by honor to tell him the truth.

If it be urged that he had no right to rely upon such assurance, it may be answered that it is not mere negligence, but gross negligence, that indicates bad faith. Canajoharie Nat. Bank v. Diefendorf, supra; 123 N. Y. 202, 25 N. E. 402, 10 L. R. A. 676. Gross negligence is equivalent to willful ignorance, and willful ignorance may evidence bad faith. Negotiable paper is endowed with the capacity for transfer, and it is not the purpose of the law that, when passing from hand to hand, its origin shall be scrutinized at the peril of nonpayment. Otherwise its valuable quality is impaired or lost. The requirement is that the transfer shall indicate a purchase with honest intent and belief that the paper is the evidence of an honest indebtedness. The confiding purchaser is not condemned, but the purchaser who is shown not to have bestowed an honest credible confidence. Negotiable instruments are largely purchased upon representations of the sellers, or advisers, or the reputation of the makers, or other inducement that justifies belief. Careful inquiry into the primary transaction is exceptional.

In the present case I find nothing incredible in the honest purchase of these notes by plaintiff upon his brother-in-law's representation of

their validity. It is easy to assert that it was a mere unsubstantial and colorable transfer. But honesty is a presumption, and a well-appearing witness fairly testifying is not to be declared untruthful upon mere suspicion. The technical defect in his evidence is that he omitted to state that he had no knowledge of the transaction out of which the notes came, or of any fraud or invalidity in their inception or defense to their payment.

The judgments should be reversed, and a new trial ordered; costs to abide the event. All concur.