RUTH VOGEL, Respondent, *v.* PERCY R. PYNE, 2D, Appellant,
Impleaded with ANDERSON T. HERD, Defendant.

First Department, July 1, 1921.

Bills and notes — action by assignee against accommodation indorser
— evidence of fraud of maker in procuring indorsements by defend-
ant and of interest of plaintiff's assignors who are witnesses in
result of action — erroneous direction of verdict — burden of proof
to show that plaintiff's assignors were bona fide holders — question
for jury — new trial on ground of newly-discovered evidence.

In an action by an assignee upon promissory notes indorsed by the defend-
ant it was error for the court to direct a verdict for the plaintiff, where
it appeared that the defendant indorsed the notes for accommodation,
that the indorsements were obtained by the maker through trickery and
fraud, and that the plaintiff's assignors who were called by her as witnesses
were directly interested in the result of the action.

Where the defendant presented sufficient evidence of fraud on the part
of the maker in obtaining the indorsements the burden of proof was upon
the plaintiff to show that her assignors had paid a fair value for the notes
and had acquired them in good faith.

Where the determination of an important issue depends upon an interested
witness whose testimony is suspicious or where the attendant circum-
stances are inconsistent with the conduct of a *bona fide* holder of the
notes for value, it is for the jury to say, although there is no direct oral
or written testimony contradictory of that given by such witness, whether
his testimony is to be credited and whether he was a *bona fide* holder
of the notes for value.

A new trial will be granted upon the ground of newly-discovered evidence,
as it appears that certain facts have developed since the trial of the action
bearing strongly on the good faith of the assignors and of such a nature
as will probably change the result, and that such facts could not have
been discovered before the trial by the exercise of due diligence.

APPEAL by the defendant, Percy R. Pyne, 2d, from a judg-
ment of the Supreme Court in favor of the plaintiff, entered
in the office of the clerk of the county of New York on the
22d day of November, 1920, on the verdict of a jury rendered
by direction of the court, and also from an order entered in
said clerk's office on the 8th day of December, 1920, denying
defendant's motion to set aside the verdict and for a new
trial made upon the minutes, and also from an order denying
defendant's motion for a new trial on the ground of newly-dis-
covered evidence.

*Stephen P. Anderton* of counsel [*William C. Armstrong* with him on the brief; *Beekman, Menken & Griscom*, attorneys], for the appellant.

*Nathan Burkan*, for the respondent.

GREENBAUM, J.:

Plaintiff sues as assignee of one Harvey C. Sickler upon three causes of action on three promissory notes indorsed by the defendant Pyne. The assignment is based upon a nominal consideration and dated and acknowledged on the same day as the date when the summons was issued in this action.

The notes, one for $5,000, another for $10,000 and the third for $5,000, were drawn by one Anderson T. Herd on January 15, 1920, to his own order and indorsed by himself and then indorsed by the appellant. Each note was payable four months after date. The notes were negotiated by Herd, who although a nominal defendant was never served with process and did not appear in the action, nor was he a witness upon the trial.

An amended complaint alleges as to the first note that it was delivered by Herd to Sickler for value but does not allege that it was negotiated before maturity. As to the second and third notes it is alleged that they were indorsed and delivered for a valuable consideration by Herd to one John H. Carpenter and by the latter to Harvey C. Sickler before maturity.

The answer in addition to a general denial sets up defenses to the effect that on April 30, 1919, appellant at the request and for the accommodation of Herd indorsed his notes payable to his own order aggregating $150,000 upon certain written promises regarding the disposition of the proceeds of the notes by Herd; that upon maturity of these notes appellant indorsed fifteen similar notes made by the defendant aggregating $120,000 for the purpose of enabling Herd to replace or renew the first set of notes to that amount; that upon the maturity of the first renewal of the notes he similarly indorsed notes aggregating $120,000 for the purpose of replacing or renewing the first renewal of notes; that among the last renewal notes

are the three notes in suit, which it is alleged were wrongfully diverted by Herd from the purpose for which they were indorsed by negotiating them to Sickler and Carpenter, who took them with knowledge sufficient to put them on notice. At the conclusion of the case the appellant moved to amend his answer to conform to the proof so as to allege that the notes were obtained by him from Herd by fraudulent representations, stating that the case had been tried on that theory. The court granted the motion to amend to the extent that the answer may be deemed to allege that the notes were obtained by Herd from Pyne through fraudulent misrepresentations. In our opinion there was sufficient evidence to warrant a jury in finding that the original notes and the two renewals thereof were obtained through the trickery and fraud of Herd. It would be an unnecessary burden upon the court to detail the evidence in this case, with which the parties are thoroughly familiar and which is fully outlined in the respective briefs of the learned counsel of the parties.

The Negotiable Instruments Law and the decisions of the courts have firmly fixed the rule that the title of a person to negotiable paper is defective when he obtains it or any signature thereon by fraud or other unlawful means or through any breach of good faith or under circumstances amounting to a fraud and that to constitute notice of a defect in the title of the one negotiating it, the person to whom it is negotiated must have had actual knowledge of the defect or knowledge of such facts that his action in taking the note amounted to bad faith. (Neg. Inst. Law, §§ 94, 95, 98, 115.)

Section 98 of the Negotiable Instruments Law provides: " Every holder is deemed *prima facie* to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course."

Section 115 provides: " Every person negotiating an instrument by delivery or by a qualified indorsement, warrants: * * * 2. That he has a good title to it; * * * 4. That he has no knowledge of any fact which would impair the validity of the instrument or render it valueless."

It follows that when the appellant had presented sufficient

evidence of fraud or wrongful purpose on the part of Herd, in obtaining his indorsement, the burden of proof was upon the plaintiff to show that those through whom she claims title to the note, namely, Carpenter and Sickler, had paid a fair value for the notes and had acquired them in good faith. (*Canajoharie Nat. Bank* v. *Diefendorf*, 123 N. Y. 191, 201; *Kelso & Co.* v. *Ellis*, 224 id. 528, 537.)

The learned trial justice evidently realized that there was enough evidence of fraud in the negotiation of the notes on the part of Herd, the maker, and that it was necessary for the plaintiff to furnish evidence of the good faith of Carpenter and Sickler, who were called as witnesses in behalf of plaintiff. It is, however, apparent from a reading of the record that the learned court failed to realize the importance of affording the defendant Pyne a considerable latitude in cross-examining these two witnesses in order that he might if possible show that they were not holders in good faith and that they had knowledge of the origin and purpose of the notes or at least sufficient knowledge concerning them as to put upon them the obligation to inquire as to the purpose for which they were indorsed by Pyne.

The note for $10,000 and the one for $5,000 upon which two causes of action were based were negotiated by Herd with Carpenter on January 16, 1920, in the presence of Sickler toward the end of April, 1920, at the joint office of Carpenter and Sickler. The third note for $5,000, being the first cause of action, was negotiated by Herd with Sickler on January 26, 1920, at the same place. It was shown that Carpenter and Sickler had been friends for upwards of ten years and that they were acquainted and had transactions with Herd during a period of three or four years, and that the personal relationship between Carpenter and Herd was intimate.

The evidence clearly indicates that Carpenter and Sickler were not disinterested witnesses, but on the contrary that they were directly interested in the result of this action. And even if it were assumed that the plaintiff holds an assignment of the notes in her own right, there would then be an implied warranty on the part of the assignor that he had a good title to the notes. (Neg. Inst. Law, §§ 97, 115.)

But aside from this legal assumption, which would show

the interest of these witnesses, the jury would have been warranted in finding that plaintiff is a mere dummy acting for them and that as matter of fact they were directly interested in the outcome of this action. Where the determination of an important issue depends upon an interested witness whose testimony is suspicious or where the attendant circumstances are inconsistent with the conduct of a *bona fide* holder of the notes for value, it is for the jury to say, although there is no direct oral or written testimony contradictory of that given by such witness, whether his testimony is to be credited and whether he was a *bona fide* holder of the notes for value. (See *Canajoharie Nat. Bank* v. *Diefendorf, supra,* 200; *Kelso & Co.* v. *Ellis, supra,* 535, 537.)

It follows that the learned trial court erred in directing a verdict. But independent of the conclusion which we have reached concerning the judgment, we have deemed it desirable also to consider the appeal from the order denying the motion for a new trial upon the ground of newly-discovered evidence. It appears from the papers on appeal that a few weeks after the trial of this action certain facts were developed in bankruptcy proceedings against Herd which were then pending, which bear strongly upon the question of the good faith of Carpenter and Sickler as holders of the notes in suit.

During the course of the trial of this action it was established that one of the considerations which induced defendant Pyne to indorse the original series of notes as well as their renewals was that Herd stated that he had purchased an auxiliary schooner named *David Cohen* and that he desired to use the proceeds of the notes to pay off the indebtedness on that vessel.

Upon cross-examination Carpenter was asked: " Q. Did you ever hear of the *David Cohen* before the 16th of January, 1920? " to which he replied: " Not that I know of."

In the examination of this witness before the United States commissioner on December 10, 1920, he testified that he had received a letter from Herd dated April 10, 1919, which is set forth in the record on appeal and from which it appears that Herd proposed to borrow from Carpenter $70,000 and to turn over to him all his right, title and interest in the property referred to therein which included the schooner *David Cohen*. There was also a letter produced at the

examination dated May 13, 1919, written by Carpenter to Herd in which it is stated: " Confirming conversation with you and Mr. Knowles, will you kindly send him the following papers in accordance with the understanding: All of the stock of the three companies owning the Schrs. ' Exilda,' ' Arthur M. Gibbons ' and ' David Cohen.' "

In addition to the foregoing testimony there is a mass of evidence submitted upon this motion from which it appears that Carpenter and Sickler, and through them a corporation of which Sickler was vice-president, were actually getting the benefit of about $90,000 of the $150,000 original notes which Pyne claims were diverted by Herd. It would extend this opinion to an undue length to refer to all the details of the unusual situation which was developed in the bankruptcy proceedings subsequent to the trial of the action. There can be no question but that the newly-discovered evidence has an important bearing upon the trial of this action and that it would probably change the result.

As already stated the evidence was of such a character that it would probably change the result if a new trial were granted. It could not have been discovered before the trial by the exercise of due diligence. It is not evidence which is merely cumulative. We are of the opinion that the interests of justice will be served by reversing the order denying the motion for a new trial, with ten dollars costs and disbursements, and granting the motion.

The judgment is reversed and a new trial ordered, with costs to defendant Pyne to abide the event.

CLARKE, P. J., DOWLING, SMITH and PAGE, JJ., concur.

Judgment reversed and new trial ordered, with costs to appellant to abide event. Order reversed, with ten dollars costs and disbursements, and motion granted.