AMERICAN SURETY COMPANY OF NEW YORK, Respondent, *v.* GEORGE B. PALMER, Appellant.

Fourth Department, December 3, 1924.

**Bills and notes — action by indorsee against maker — payee of note overdrew account at bank through connivance of bookkeeper — plaintiff, bond carrier, assumed overdraft — payee transferred note to plaintiff in part settlement of overdraft — plaintiff is holder for value under Negotiable Instruments Law, § 51, though note was taken for antecedent debt — as between maker and payee, title was defective — payee told plaintiff's agent that note was given for corporate stock and showed agent financial statement of maker — under uncontradicted evidence no question of fact arose as to plaintiff's good faith — credibility of plaintiff's agent under evidence was not for jury — plaintiff, having assumed obligation to pay bank, was equitably subrogated to rights of bank — Appellate Division being in doubt as to whether question of fact was raised as to good faith of plaintiff grants permission to appeal to Court of Appeals.**

The plaintiff in this action on a promissory note against the maker is a holder for value under section 51 of the Negotiable Instruments Law, though the note was accepted from the payee in part settlement of an overdraft at a bank which the payee was permitted to make through the connivance of a bookkeeper in the bank who was bonded by the plaintiff, since it appears that the plaintiff assumed the obligation of the overdraft on the ground that it was procured through the fraud of the bookkeeper which it had bonded.

There was no question of fact under the evidence as to the good faith of the plaintiff in taking the note, the title to which as between the payee and the maker was defective, and the court properly directed a verdict in favor of the plaintiff on the evidence which shows that after the plaintiff had assumed the obligation of the overdraft, the payee of the note in negotiations for the settlement of the overdraft transferred the note to the plaintiff and stated to the plaintiff's agent at the time that he had received the note in payment for corporate stock in a company of which he was the absolute owner and that the maker who resided in another city, was financially able to pay the note, and presented to the plaintiff's agent a statement as to the financial condition of the maker and told the agent also that he, the payee, had large sums of money tied up in other businesses which he was unable to use at that time, and that while he had no cash then to meet the overdraft, he had sufficient property to pay in full.

The fact that the payee of the note was guilty of negotiating worthless checks at a bank through the dishonest act of an employee of the bank does not raise a presumption that the note was tainted with fraud and illegality.

Since the testimony of the plaintiff's agent was not contradicted by any direct evidence nor by legitimate inferences to be drawn from proven facts, his credibility was not a question for the jury.

While at the time the transaction between the payee of the note and the plaintiff took place, the plaintiff had not paid the overdraft, it had, nevertheless, assumed the obligation and was at that time equitably subrogated to the rights of the bank against the payee of the note and, furthermore, immediately after the note was transferred, the plaintiff actually paid to the bank an amount in excess of the face of the note.

Inasmuch, however, as there is a doubt whether or not the evidence presented a question of fact as to the good faith of the plaintiff in taking the note, permission is granted to the defendant to appeal to the Court of Appeals.

MOTION by the defendant, George B. Palmer, for a reargument of an appeal from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Onondaga on the 19th day of March, 1924, upon the verdict of a jury rendered by direction of the court, and also from an order entered in said clerk's office on the 24th day of March, 1924, denying the defendant's motion for a new trial made upon the minutes.

Defendant asks leave to appeal to the Court of Appeals in the event that the motion for reargument is denied.

*John H. McCrahon,* for the appellant.

*Mackenzie, Smith & Lewis* [*R. B. Marvin* of counsel], for the respondent.

DAVIS, J.:

We have heretofore affirmed the judgment and order appealed from (210 App. Div. 867). Defendant's counsel now moves for a reargument, and in the event that is denied, asks leave to appeal to the Court of Appeals.

Our minds have at no time been entirely free from doubt in

this case.   Having given careful consideration to the briefs and made independent examination of other authorities not cited therein, we are inclined to believe that we will get no new light on a reargument.   We also believe that one of the questions presented is sufficiently important so that leave to appeal should be granted. It is, therefore, proper that we should formally state the views we entertained in arriving at a decision.

The action was brought on a note given November 29, 1922, by defendant to one Wilmath, a stock salesman, payable three months after date.   Wilmath was evidently a depositor doing business with the City Bank Trust Company at Syracuse.   In the preceding May he had deposited at different times at least three checks which were not paid, and overdrew his account in the amount of $18,000.   This he was able to do through the laxity, poor judgment or connivance of a bookkeeper in the bank.   The checks were not paid and the bank was confronted with the loss. It had a policy issued by plaintiff protecting it against loss due to the dishonest act of an employee.   The bank made claim on its policy.   The plaintiff, through its agent, Metcalf, made an investigation during the summer, evidently ascertained the facts concerning the loss and agreed to pay.   The bank and the surety company were making efforts to clear up and recoup the loss as far as possible out of the accounts of Wilmath and the bookkeeper. In the course of the transaction, Metcalf had several interviews with Wilmath, and the latter agreed to pay up as soon as possible. At one interview Wilmath produced the note in suit and asked Metcalf to receive it and apply it on the indebtedness.   The note on its face was a valid, negotiable instrument, and it was evidently accompanied by a financial statement made by defendant.

Preceding the taking of the note, Metcalf made inquiry of Wilmath concerning how it was obtained, and the latter informed him that he had purchased the Capital Finance Corporation and was sole owner of it, owned the " charter " and also all the capital stock, and showed Metcalf the " charter " and the book of stock certificates; and said that he had sold to Palmer $5,000 worth of stock for which the note had been given in payment and that he had had extensive dealings with Palmer on other occasions.   Wilmath furnished the further information, in substance, that he had many thousands of dollars tied up in an ink remover corporation; that he was negotiating a sale of the rights in Boston and in Detroit; but although he had plenty of property, he had no cash at the present time, but these properties were available for the adjustment of his affairs and he intended paying up the entire matter at the bank in a few weeks; and he asked Metcalf to take

the note because it was perfectly good and the latter might as well handle it, for the main reason that he could not discount it because his trouble at the bank had put him in a position where he could not get banking facilities. About the same time Wilmath's attorney assured Metcalf that Wilmath's obligations would be paid. No further investigation was made, but the note was indorsed over and taken by plaintiff through its agent.

The defendant upon the trial established that the note was given to Wilmath under such circumstances that as between the maker and payee there was a defect in title.

On the original argument appellant claimed that plaintiff was not a holder for value because the note had been given for an antecedent debt. We were satisfied then, as we are now, that this question has been definitely settled by the provisions of section 51 of the Negotiable Instruments Law, and that the prior rule in this State established by the decision of *Coddington* v. *Bay* (20 Johns. 637), and thereafter adhered to, had been definitely abrogated by the statute. (*Kelso & Co.* v. *Ellis,* 224 N. Y. 528.)

The principal question is whether the plaintiff was a holder in due course, having taken the note in good faith. (Neg. Inst. Law, § 91.) Any notice the agent might have had of any defect or any bad faith on his part may be imputed to plaintiff. (*Baruch* v. *Buckley,* 167 App. Div. 113.)

There was no evidence controverting the facts concerning the negotiation of the note above stated, testified to by plaintiff's agent, Metcalf. A verdict for plaintiff was directed on this evidence by the learned trial court. It having been proved that the title of the payee was defective, the burden was on the plaintiff to show that it was a holder in due course; and it must establish a purchase in good faith. (Neg. Inst. Law, § 98; *Title Guarantee & Trust Co.* v. *Pam,* 232 N. Y. 441, 452.)

With the evidence of the circumstances under which the note was taken, did there remain a question of fact to be drawn from logical inferences arising in the evidence, sufficient to require submitting to the jury the question of plaintiff's good faith?

Where some notice of defect is given on the face of the note (*Rochester & C. T. R. Co.* v. *Paviour,* 164 N. Y. 281), or the circumstances concerning its negotiation are attended with unmistakable evidence of *mala fides* in the transaction (*Canajoharie Nat. Bank* v. *Diefendorf,* 123 N. Y. 191; *Smith* v. *Weston,* 159 id. 194, 199; *Kelso & Co.* v. *Ellis, supra; Vogel* v. *Pyne,* 197 App. Div. 633; *Weiss* v. *Goldberger,* 209 id. 615, 618), a different question arises and there can be no doubt that the question must be submitted to the jury. By the law merchant and by statute it has long

been the rule that the integrity and sanctity of negotiable instruments should be maintained as a matter of business policy so that they may be readily salable and pass from hand to hand in the course of business transactions; and holders in due course may be free from liability for secret defects, and unaffected by the fact that they originated in an illegal consideration. The purchaser of a note is not legally bound to make inquiry of the maker as to its validity, nor is mere suspicion or even negligence in the matter of investigation fatal to a claim of being a holder in due course. (*Hurst* v. *Lee*, 143 App. Div. 614, 617; *Cole* v. *Harrison*, 167 id. 336; *Sabine* v. *Paine*, 166 id. 9, 13; affd., 223 N. Y. 401; *Magee* v. *Badger*, 34 id. 247; *Second Nat. Bank* v. *Weston*, 172 id. 250.)

The defendant urges that because Metcalf was dealing with a man guilty of negotiating worthless checks at a bank through some apparently dishonest act of an employee, for which his company became liable, of all of which he was well informed, the jury were entitled to draw the inference that a note in the hands of such a man was presumptively tainted with fraud and illegality requiring further inquiry. As we have said, this question is not free from doubt. No definite rule can be stated furnishing a reliable test as to when, under circumstances similar to these, there is a question of fact to be submitted to the jury. Each case must rest upon its particular facts. We think that, under the circumstances detailed, the average man taking a note, good on its face and accompanied by a financial statement, the maker of which resided in another city, would not have brought to his mind sound reason for doubting its validity; and that Metcalf did not have cast upon him the burden of making further inquiry, and that no inference as to bad faith can be drawn from these undisputed facts.

Another question closely related to the one just stated is that the evidence of good faith rests entirely upon the testimony of Metcalf, an interested witness, and is, therefore, not necessarily to be accepted as true. (See *Joy* v. *Diefendorf*, 130 N. Y. 6.)

Metcalf's testimony was not contradicted by any direct evidence, and as we believe, not by any legitimate inferences to be drawn from the evidence. In common experience in transactions such as were here carried on, there is nothing in the evidence opposed to the probabilities, nor was the evidence " in its nature surprising or suspicious." We think, therefore, that Metcalf's testimony was to be accepted as a true statement of the facts concerning the negotiation of the note, and there was no occasion to submit the question of his credibility to the jury. (*Hull* v. *Littauer*, 162 N. Y. 569; *Second Nat. Bank* v. *Weston, supra; Hurst* v. *Lee, supra.*)

On motion for reargument, counsel raises the question as to plaintiff being subrogated to the rights of the bank at the time it took this note, and claims it was not a holder for value. The note was negotiated at a time when the plaintiff had assumed but had not yet paid the bank's claim. Under the modern doctrine of equitable subrogation we think that a positive assumption of liability accepted by the creditor is sufficient, if the parties themselves are in agreement, to establish an equitable right in the guarantor, though as between the creditor and guarantor the equity of subrogation does not arise until the whole debt has been discharged. (*McGrath* v. *Carnegie Trust Co.*, 221 N. Y. 92, 95.) The payment need not be made in money and if the creditor was satisfied and willing that plaintiff be subrogated and its interests adequately protected, defendant may not complain. (*Arnold* v. *Green*, 116 N. Y. 566, 571; *Morehouse* v. *Brooklyn Heights R. R. Co.*, 185 id. 520, 524; *Pittsburgh-Westmoreland Coal Co.* v. *Kerr*, 220 id. 137, 143; *Employers' L. A. Corp., Ltd.*, v. *International M. P. Co.*, 192 App. Div. 88, 92; 37 Cyc. 407, and cases cited.)

But in any event, the plaintiff paid a part of the bank's loss, larger than the amount of the note, within a few days after taking the note and before its maturity; and became subrogated *pro tanto* to the extent of its payment, unless the bank objected and demanded full payment. (37 Cyc. 410.)

The motion for reargument should be denied, and the motion for leave to appeal to the Court of Appeals granted.

HUBBS, P. J., CLARK, SEARS and CROUCH, JJ., concur.

Motion for reargument denied. Motion for leave to appeal to Court of Appeals granted.