ALBERT F. DUTCH, Appellant, v. FRANK H. McMAHON and Others, Respondents.

Fourth Department, January 5, 1927.

Bills and notes — action by subsequent holder to whom note was indorsed without recourse — defense of fraud — note was given by part of defendants to cover damage caused by them when they broke into payee's store — plaintiff was informed of transaction out of which note was given — basis of defense is fraudulent representation by payee as to amount of damage done and as to value of property turned over to defendants who caused damage — verdict that fraud entered into giving of note is supported by evidence — mere knowledge of transaction out of which note was given is not knowledge on part of plaintiff of fraud — said facts do not constitute notice under Negotiable Instruments Law, § 95, of infirmity in instrument.

This is an action by a subsequent holder of a promissory note to recover thereon. The note was given by part of the defendants in settlement of damage caused by them when they broke into the payee's store and destroyed certain goods therein. The defense to this action is fraud consisting of misrepresentation on the part of the payee as to the damage done and as to the value of property turned over to the makers of the note in the settlement. The verdict of the jury that fraud entered into the transaction is supported by the evidence.

The note in question was transferred by the payee to his attorney without recourse, who, in turn, transferred it to the plaintiff to whom he was indebted, also without recourse, and at the time of the transfer to the plaintiff the latter was informed of the transaction in which the note was given but had no further information as to any fraud entering into its inception and no connection is shown between the payee and the plaintiff. The facts do not, within section 95 of the Negotiable Instruments Law, show notice of an infirmity in the instrument, for that section requires that the person to whom it is negotiated must have had actual knowledge of the infirmity or knowledge of such facts that his action in taking the instrument amounted to bad faith. In this case the evidence merely raises a suspicion that possibly the plaintiff had knowledge of facts which is not sufficient to charge the plaintiff with knowledge of infirmity in the instrument which would constitute a good defense to the action.

APPEAL by the plaintiff, Albert F. Dutch, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Erie on the 30th day of December, 1925, upon the verdict of a jury, and also from an order entered in said clerk's office on the 8th day of January, 1926, denying plaintiff's motion for a new trial made upon the minutes.

*Solomon Frank* [*Irving M. Weiss* of counsel], for the appellant.

*Coonly & Sapowitch* [*Edward J. Coonly* of counsel], for the respondents.

SAWYER, J.   On April 16, 1925, one Max Reinman was the owner of a millinery store located in the Loew Theatre Building in the city of Buffalo, known as The French Millinery.   In the evening of that day, and after the store was closed for the night, defendants Frank H. McMahon and William J. Dockstader wrongfully entered the store and spoiled or damaged stock and fixtures of considerable value.

Negotiations for settlement of that damage were later entered upon and culminated in an agreement for the payment to Mr. Reinman of $1,000 in full of all claim against those defendants, it being also agreed that the injured millinery stock would be handed over and delivered to them.   While Mr. Reinman was threatening to bring a civil action to recover his loss, no criminal charge had been made by him but the police authorities seem to have preferred a felony charge, the precise nature of which is not made clear.   This angle of the proposition evidently entered into the negotiations for, with the consent of the authorities, the charge was changed to one for misdemeanor so that there would be no legal impediment to a settlement of the criminal aspect of the affair as well as that for civil damage.   In the carrying out of this agreement defendants paid $500 in cash and for the remaining $500 gave Mr. Reinman a promissory note, indorsed by the defendant Margaret McMahon, dated April 22, 1925, and due three months after its date, which note is the subject of this litigation.   When the money and the note were tendered to Mr. Reinman he at first declined to accept the note, whereupon an arrangement was made between the attorney who had represented him in the negotiations and himself whereby he indorsed the note to the attorney without recourse and accepted in lieu thereof a credit of $300 upon an account that he owed the attorney, together with the attorney's individual note for $200.

Later the $500 note was indorsed without recourse by the attorney and turned over to plaintiff.   No question is raised but that the note was acquired by plaintiff before maturity and for value.   The defense centers entirely upon the proposition that it was originally obtained through fraud practiced by Mr. Reinman upon defendants of which plaintiff and his immediate indorser had knowledge; or that in any event plaintiff had knowledge of such facts that his action in taking the instrument amounted to bad faith.

The answers allege both duress and fraud, the latter being set up as an agreement upon the part of Mr. Reinman " to turn over and execute a bill of sale to certain personal property which the said Max Reinman represented to be worth One Thousand ($1000.00) dollars," together with the usual allegations of known falsity, intent to deceive and reliance upon the representations.

Upon the trial duress was abandoned and the case proceeded as for fraud although upon a theory somewhat different from that set up in the answers, viz., that Mr. Reinman falsely and knowingly misrepresented to defendants the amount of damage which they had caused and sorted out some 200 or more hats, long before unsalable and of little or no value, and delivered them to the defendants instead of as agreed the salable stock that had been shown defendants as that spoiled by them. No proof of an agreement for a bill of sale was made, the delivery of the stock to the defendants being assumed to be incidental to the general proposition of settlement.

Plaintiff proved possession of the note and then rested on the legal presumption that he was a holder in due course. The facts hereinbefore recited were then submitted by defendants as evidencing a defect in the instrument and to negative plaintiff's claim to be a holder in due course; upon the rebuttal the attorney from whom plaintiff received the note was sworn as a witness in his behalf and testified that he turned the note over to plaintiff in part payment for a house which plaintiff had built for him; that he indorsed it without recourse because it had been so delivered to him; giving that to plaintiff as the reason and assuring him that the makers, the indorser, or some of them, were financially responsible; that after taking some time to investigate or to consider the matter plaintiff accepted it indorsed in that manner.

Mr. Dutch himself had been called as a witness and on cross-examination testified, in substance, that he accepted the note to apply upon a genuine debt; that he was assured the parties were financially responsible; that the circumstances under which it was given were explained to him and under those circumstances he believed it would be paid and so accepted it. No attempt was made to contradict any of this testimony.

Two questions were submitted to the jury by the learned court: *First*, whether any fraud was committed upon these defendants when the settlement was made? *Second*, if there was fraud, whether the plaintiff, before he took the note, knew anything about it? The general verdict for defendants is, of course, a finding in their favor upon both these questions. The question of fraud went to the jury upon a dispute of facts and if nothing else were

involved we would not be disposed to interfere.　As to the plaintiff's good faith, however, a different situation is presented.　No connection between himself and Mr. Reinman is shown.　He happened to have business relations with the attorney for the latter, who was largely indebted to him.　He admits that he was told the circumstances that led to the giving of the note, was assured the parties or some of them were good, believed it would be paid and so accepted it.　The fact that it was indorsed without recourse was noted by him and the reason therefor explained, evidently to his satisfaction.　Upon such a state of proof the verdict could only be predicated upon the belief of the jury that knowledge on his part of the facts out of which the note grew of itself evidenced bad faith.　Such a belief must rest entirely upon suspicion.

Section 95 of the Negotiable Instruments Law provides: " To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith," and a consistent line of authorities has well settled the law to be that mere negligence, nor even evidence creating suspicion or sufficient to create suspicion, will not suffice to defeat a purchaser of negotiable paper; there must be proof of actual bad faith before he can be charged with notice of any defect or infirmity that will prevent its collection. (*Cheever* v. *Pittsburgh, etc., R. R. Co.*, 150 N. Y. 59, 65–67; *Cole* v. *Harrison*, 167 App. Div. 336; *Oliner* v. *Goldenberg*, 168 id. 874; *McBee Co.* v. *Shoemaker*, 174 id. 291, 297; *Harford Nat. Bank* v. *Gardner*, 157 N. Y. Supp. 849; *Ironbound Trust Co.* v. *Schmidt-Dauber Co.*, 102 Misc. 708, 712.)　When plaintiff bought the note no claim of fraud had been made by defendants.　On the surface, it had been given in settlement of a just claim for damages and was apparently valid.　That he was informed or had hinted to him any wrongdoing by Mr. Reinman is not attempted to be shown, and it seems unlikely that it could have been shown.　He had no part in the original transaction and it will not be assumed that an attorney seeking to get a risky note (if this was such) into the hands of an innocent purchaser would defeat his very object by divulging infirmities known to him.　That would be contrary to human experience.　Plaintiff took the note as part of a very considerable payment and we can find nothing in the case to warrant the holding that he had any notice of an infirmity nor any knowledge from which bad faith can be imputed to him.　While the circumstances may have been sufficient to raise an issue of fact as to the plaintiff's good faith in the transaction, the ver-

dict is so clearly against the weight of the evidence as to require reversal.

The judgment should be reversed and a new trial directed, with costs.

All concur.    Present — HUBBS, P. J., CLARK, SEARS, CROUCH and SAWYER, JJ.

Judgment and order reversed on the law and facts, and a new trial granted, with costs to appellant to abide the event.