CREDIT ALLIANCE CORPORATION, Appellant, *v.* BUFFALO LINEN SUPPLY CO., INC., Respondent.   (Actions Nos. 1, 2 and 3.)

Fourth Department, March 15, 1933.

*Louis W. Manchester* and *Eliot E. Berkwit,* for the appellant.

*Michael P. Geraci* [*Michael J. Montesano* of counsel], for the respondent.

EDGCOMB, J.   These actions are brought to recover upon a series of nine promissory notes made by the defendant to the order of the Asher Manufacturing Company, and purchased by and transferred to the plaintiff before maturity.

The notes were given in payment of a washing machine, which was purchased by the defendant from the Asher Manufacturing Company in August, 1928.   The cost of the machine was $3,920. The notes were dated August 30, 1928.   Eight were for $450 each, and the other was for $320.   The first note became due twenty-

eight months after date, and thereafter one note matured each succeeding month.

The machine was sold on a conditional sales agreement. Title to the chattel remained in the vendor until the purchase price was fully paid.

There is evidence which would uphold a finding that the Asher Manufacturing Company impliedly warranted that the machine was reasonably fit for the purpose for which it was to be used (Pers. Prop. Law, § 96), and that there was a breach of such warranty. Defendant has put itself in a position to sue the vendor for damages for such breach, or to offset such damages in an action brought by the seller for the purchase price of the machine. (Pers. Prop. Law, § 150.) The vendor, however, is not a party to this action. The notes have been assigned to the plaintiff. The result of this appeal depends upon whether plaintiff is a holder of the notes in suit in due course. Plaintiff insists that it is. Defendant claims otherwise, and takes the stand that the plaintiff took the instruments subject to the equities between the original parties. Defendant's assertion has found favor with the trial court. We are unable to agree with that conclusion.

The notes are complete and regular upon their face; they had never been dishonored; appellant became a holder of the same for value before they became due.

But defendant insists that the plaintiff did not take the paper in good faith, and that it had notice of the infirmity in the instruments when they were negotiated.

Plaintiff was not legally bound to make inquiry of the maker of these notes as to their validity. The rule defining the duty and obligation resting on one who is about to purchase negotiable paper before its maturity, in order to escape the charge of bad faith, is well settled. It is stated by Judge O'Brien, in *Cheever* v. *Pittsburgh, etc., R. R. Co.* (150 N. Y. 59, 65) in the following language: " He is not bound at his peril to be on the alert for circumstances which might possibly excite the suspicion of wary vigilance; he does not owe to the party who puts the paper afloat the duty of active inquiry in order to avert the imputation of bad faith. The rights of the holder are to be determined by the simple test of honesty and good faith, and not by a speculative issue as to his diligence or negligence. The holder's rights cannot be defeated without proof of actual notice of the defect in title or bad faith on his part evidenced by circumstances. Though he may have been negligent in taking the paper, and omitted precautions which a prudent man would have taken, nevertheless, unless he acted *mala fide*, his title, according to settled doctrine, will prevail."

This rule has consistently been followed in many other cases, among which the following may be cited: *Magee* v. *Badger* (34 N. Y. 247, 249); *Second National Bank* v. *Weston* (172 id. 250, 254, 255); *Dutch* v. *McMahon* (219 App. Div. 203, 206); *Cole* v. *Harrison* (167 id. 336, 340); *Sabine* v. *Paine* (166 id. 9, 12, 13; affd., 223 N. Y. 401); *Hurst* v. *Lee* (143 App. Div. 614, 617).

This is not a case where the notes were obtained by fraud, and where the burden would rest on the plaintiff to show that it had no knowledge or notice of the fraud with which the notes were tainted, as was the situation in *Vosburgh* v. *Diefendorf* (119 N. Y. 357); *American Exchange Nat. Bank* v. *New York Belting, etc., Co.* (148 id. 698), and kindred cases.

Measured by the duty as above defined, I fail to see how it can be said that plaintiff was guilty of any bad faith. It paid $2,903.60 for this paper, to say nothing of its contingent liability represented by a " due bill," by the terms of which plaintiff agreed to pay the Asher Manufacturing Company an additional $369.43 if and when appellant received payment in full of all notes and obligations purchased by it from said Asher Manufacturing Company. While this was a liberal discount, it was not, in and of itself, sufficient to warrant the inference of bad faith. (*Second National Bank* v. *Weston*, 172 N. Y. 250; *Coopersmith* v. *Maunz*, 237 App. Div. 795.)

As before noted, the only defense raised by the defendant to these notes arises out of an alleged breach of warranty on the part of the payee. The evidence shows that such breach had not occurred when the plaintiff purchased these instruments on September 22, 1928. That was long before the first note became due. The machine was in a warehouse in Buffalo, and was not delivered to the defendant until November, 1928, long after plaintiff came into possession of this paper. The fact that the machine was not as represented was unknown to any one on September 22, 1928. Any inquiry which plaintiff might have made at that time would have failed to disclose any breach of the seller's warranty; it would have simply shown that the machine was in the warehouse, and had not been delivered.

The contract for the sale of the machine in question was not assigned to the plaintiff until November 5, 1928, but if we were to assume that when the plaintiff purchased these notes it knew the conditions under which they were executed, and the terms of the conditional sales contract, and that the vendor had impliedly warranted that the machine was reasonably fit for the purpose for which it was to be used, such knowledge was not sufficient to apprise the plaintiff of the fact that there had been a breach of such warranty, so as to defeat appellant's recovery on these notes.

There had been no breach of warranty when this paper was negotiated. Plaintiff cannot be charged with knowledge or notice of any infirmity in the instruments. (*Tradesmen's National Bank* v. *Curtis*, 167 N. Y. 194; *Commercial Investment Trust, Inc.*, v. *Pearson*, 236 App. Div. 772; *Davis* v. *McCready*, 17 N. Y. 230; *Mabie* v. *Johnson*, 8 Hun, 309.)

*Mabie* v. *Johnson* (8 Hun, 309) is very similar to the case at bar. There the plaintiff had purchased a negotiable instrument before maturity. Defendant, the maker, offered to prove an express warranty of the machine, for the purchase price of which the note was given, and a breach of that warranty, and sought to recoup damages therefor. The note read as follows: " For one Hinckley knitting machine *warranted* I promise to pay," etc. It was held that, giving the words of the instrument the broadest possible meaning, they did not imply that there had been a breach of the warranty, nor did they show or tend to show to the purchaser, or even excite his suspicion, that there was any defense to the note when he purchased it.

In the recent case of *Commercial Investment Trust, Inc.*, v. *Pearson* (236 App. Div. 772, revg. 141 Misc. 78) this court had before it a case involving the same question which is presented here. That was an action to recover the amount of six promissory notes which had been purchased by the plaintiff before maturity. The notes were given by the defendant for the purchase price of a milking machine. Contemporaneously with the delivery of the notes, defendant and the payee entered into a separate agreement relating to the sale of the machine, which provided that title and ownership were to remain in the vendor until the notes were paid. At the same time the vendor executed a separate instrument in which it guaranteed that, if the milking machine did not do the work for which it was designed, it would be returned, and the vendor would either give the purchaser a new machine or refund the purchase price. Mention of the guaranty was made in the sales contract, which was assigned to the plaintiff along with the notes. The machine was not satisfactory, and the obligations of the guaranty were not complied with. The notes and contract were purchased by the plaintiff on October 6, 1928. The machine was not delivered until the following November. This court held that there was no breach of the guaranty until after plaintiff had purchased the notes, and that plaintiff was a holder in due course. It is impossible to distinguish this case from the one before us on the present appeal.

As is pointed out in the case of *Title Guarantee & Trust Co.* v. *Pam* (232 N. Y. 441, 457) the plaintiff was not affected, when it

purchased the notes in suit, by any equities which might never come into being. Until the warranty was breached, no defense existed. The law will not presume a breach wherever there is a warranty.

*Securities Investment Company* v. *Maxwell* (131 Misc. 160; affd. without opinion, 224 App. Div. 872) is not in conflict with the views here expressed. In that case the note in suit was not to become a binding obligation until the trial period of thirty days had elapsed. Its delivery was conditioned upon the maker's "entire satisfaction" with the chattel. There was a complete failure of consideration. The purchaser of the note had notice that the buyer was privileged to return the goods to the seller, who guaranteed to pay back the purchase price, including transportation charges, and cancel the contract.

For the reasons stated, I have reached the conclusion that the plaintiff is a holder of these notes in due course, and that it holds them free from any defense or counterclaim arising out of a breach of warranty on the part of the Asher Manufacturing Company. That being so, the judgment appealed from should be reversed, and judgment should be ordered in favor of the plaintiff for the amount of the several notes in suit, with interest and costs.

All concur.

Judgment reversed on the law, with costs, and judgment in each case granted in favor of the plaintiff for the amounts demanded in the complaint respectively, with costs.