**UNITED STATES v. SCHAEFFER et al.**

No. 327.

District Court, D. Maryland.

June 12, 1940.

Bernard J. Flynn, U. S. Atty., and C. Warren Colgan, Asst. U. S. Atty., both of Baltimore, Md., for the United States.

William F. Laukaitis and Jacob A. Gross, both of Baltimore, Md., for defendants.

WILLIAM C. COLEMAN, District Judge.

This is a suit on a negotiable promissory note, and arises by reason of the National Housing Act of June 27th, 1934, and amendments thereto, 12 U.S.C.A. §§ 1702–1715, which creates a National Housing Administration, and provides that all powers of the Administration are to be exercised by a Federal Housing Administrator appointed by the President. Among other things, the Administrator is authorized and empowered to insure financial institutions, approved by him, against losses which they might sustain as a result of certain types of loans and advances of credit made by them for the purpose of financing alterations, repairs and improvements upon real property, including the purchase and installation of equipment and machinery. The Administrator is authorized to enter into loan agreements with such financial institutions, the funds to carry out the

provisions of the act to be obtained from the Reconstruction Finance Corporation, and, at the President's discretion, from any funds available to the President for emergency purposes.

The Heating & Plumbing Finance Corporation of New York City, hereinafter called the Finance Corporation, was accepted on August 10th, 1934, by the Administrator as eligible for credit insurance under the act. Although a separate corporate entity, it is a subsidiary of the American Radiator Company.

In the early part of 1935 the defendants desired to have a new oil burner heating system installed in their home in Baltimore and to take advantage of the credit provisions of the act. They were first approached by a representative of a company known as the Pioneer Oil Heating Company, by whom a proposal was made for the purchase of an oil burner, but no contract was actually signed by the defendants with this company, although defendants gave its representative a cash deposit of $10 and were further credited with the sum of $25 on the installation because of the fact that the electrical work was to be done by Mr. Schaeffer himself, one of the defendants. It appears that, about the same time, the American Radiator Company got interested in the situation through one F. R. Wagner, a local heating contractor, it being contemplated that defendants should purchase part of the equipment from the American Radiator Company. Accordingly, Wagner obtained the defendants' signatures to an application for credit under the act. In this application, which was signed in blank by the defendants and later filled out by a representative of the American Radiator Company, and which bears the printed statement that it has been "Approved by Federal Housing Administration," the estimated amount of credit required was stated to be $873.83. This same amount appears as the cost of installation in a proposal and specifications bearing the same date, namely, May 27th, 1935, which Wagner signed and which he got the defendants to sign in blank, and which also was later filled out by a representative of the American Radiator Company. This document contains a formal assignment also bearing the same date, namely, May 27th, 1935, from Wagner to the American Radiator Company of all of Wagner's right, title and interest in the contract of installation. At the same time a promissory note was taken from the defendants, which they both likewise signed in blank, and this document also was later filled out by a representative of the American Radiator Company so as to make its terms consonant with the contract of installation, that is to say, it was made payable for $873.83 to the order of Wagner, in thirty-six equal consecutive monthly installments, payable at the office of the Finance Corporation. It was postdated August 30th, 1935, because the above-mentioned contract for installation was under a "special summer plan" and it was contemplated that the completion of the work would run into the summer.

The note was indorsed by Wagner "without recourse"; was given to the American Radiator Company, which likewise indorsed it "without recourse", sent it to the Finance Corporation which discounted it, and the proceeds to the extent of $760, that is, the face value of the note less a finance fee of $113.83, were sent to the Baltimore Branch of the American Radiator Company and this company paid that amount to Wagner on June 13th, 1935. The "without recourse" indorsement of the American Radiator Company is by its treasurer and bears the following additional, printed notation, apparently all part of the one stamped indorsement: "This note is owned by the Heating & Plumbing Finance Corporation, New York, N. Y. L. H. Goldbright, Jr., Treas."

The Finance Corporation notified the defendants that it had purchased their note and to pay installments to it as they fell due. Upon maturity of the first installment of the note, namely, September 30th, 1935, the Finance Corporation duly presented it and pressed the defendants for payment, and continued to do so with respect to successive installments. However, they declined to make any payment, claiming that the installation of the heating plant had not been made according to specifications. Extensive correspondence ensued. The contractor, Wagner, made certain efforts to improve the operation of the heating equipment but the defendants remained unsatisfied. The note being long in default, on August 3rd, 1936, the Finance Corporation presented it for payment under its insurance agreement to, and received from the Administrator $804.81, representing the amount the Finance Corporation had paid Wagner, plus accrued interest and default charges; and the Finance Corporation in-

dorsed the note to the Administrator, this indorsement reading as follows: "All right, title and interest of the undersigned is hereby assigned (without warranty, except that the note qualified for insurance) to the Federal Housing Administrator acting in behalf of the United States of America." The Administrator in turn attempted to obtain payment of the note, but being likewise unsuccessful, the present suit was brought on September 2nd, 1939, that is, more than three years after the note became in default.

The aforegoing somewhat complicated facts, reduced to a brief summary and shorn of nonessentials, may be stated as follows: S signs, as maker, a note in blank and also a contract in blank, for work which W is to do for S. Then A, who is to supply materials to W for the work, takes both the note and the contract as assignee; gives no consideration for them, fills out the provisions of the contract and the note,—the amount and terms of payment of the latter being consonant with the corresponding provisions of the former, —and the note is postdated, making it payable to W. Before the note's maturity, W indorses it "without recourse" to A who, at the same time, indorses it "without recourse" to B, a subsidiary of A, and also surrenders the contract to B, and B pays W the amount of the note. After maturity, B, being unable to collect from S, assigns the note to F who, under an insurance arrangement with B, reimburses B for the then value of the note. F makes demand upon S for payment of the note, it is refused and F sues S.

In the above epitome of facts, for the sake of clarity and simplicity, F and S have been substituted for the plaintiff and the defendants, respectively, in the present suit.

It is the contention of the plaintiff, the United States, that it is entitled to recover from the defendants the face value of the note, including accrued interest and charges incident to default, because the Administrator, the present holder of the note and the agent of the Government, is to be treated as a holder in due course, since, although admittedly not a holder himself in due course because he purchased the note after maturity, he nevertheless acquired it from a party that, as is claimed by the Government, was at the time a holder in due course, namely, the Finance Corporation. Reliance is had upon Article 13, Section 77 of the Annotated Code of Mary-land, which provides, "In the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were nonnegotiable. But a holder who derives his title through a holder in due course, and who is not himself a party to any fraud or illegality affecting the instrument, has all the rights of such former holder in respect of all parties prior to the latter."

Before considering the merits of the controversy, there are two questions which must be dealt with: (1) is the United States a proper party to this suit; that is to say, is it the real party in interest, or is the Federal Housing Administrator to be treated as a separate entity who should bring the suit in his own name; and (2) since more than the three-year period under the Maryland statute of limitations, Code Pub.Gen.Laws Md.1924, Art. 57, § 1, has elapsed between the date of default under the note sued on and the bringing of the present suit, is it barred by limitations?

While at the time of the hearing, a determination of both of these questions was not without some difficulty, on the then state of the reported decisions, they have been definitely answered by the very recent decision of the Supreme Court in United States v. Summerlin, 60 S.Ct. 1019, 84 L. Ed. ——, decided May 27th, 1940.

In the Summerlin case the question before the court was whether a Florida statute, limiting the time for filing claims against a decedent's estate, could deprive the United States of its right to enforce its claim on a note, insured just as was the note in the present case, under the Federal Housing Act. There, as here, the suit was brought in the name of the United States, the Federal Housing Administrator by a series of transactions having become the assignee of a claim against decedent's estate. The Supreme Court decided both questions in favor of the United States. That is to say, on the question of whether the United States was the proper party plaintiff, the court said, in an opinion by the Chief Justice: "The claim assigned to the Federal Housing Administrator acting on behalf of the United States became the claim of the United States, and the United States thereupon became entitled to enforce it. Act of June 27, 1934, 48 Stat. 1246 * * *." On the second question, namely, that of limitations, the Court said: "It is well settled that the United States is not bound by state statutes of limitation or

subject to the defense of laches in enforcing its rights. * * * The same rule applies whether the United States brings its suits in its own courts or in a state court. Davis, Director General of Railroads v. Corona Coal Co., 265 U.S. 219, 222, 223, 44 S.Ct. 552, 553, 68 L.Ed. 987. * * * When the United States becomes entitled to a claim, acting in its governmental capacity and asserts its claim in that right, it cannot be deemed to have abdicated its governmental authority so as to become subject to a state statute putting a time limit upon enforcement. Chesapeake & Delaware Canal Co. v. United States, 250 U.S. 123, 126, 127, 39 S.Ct. 407, 408, 63 L.Ed. 889."

■ Turning to the facts, we do not find support for the contention of the Government. The situation is governed by the law of Maryland, where the note was executed, and where also the contract was made and to be performed. We are unable to conclude that the Finance Corporation was a holder in due course. When the American Radiator Company acquired the note and accompanying contract from defendants, it did so as the Finance Corporation's agent,—it gave no consideration for these documents, and the Finance Corporation, as the Radiator Company's principal, is charged with the same knowledge that the Radiator Company had of any defenses which the defendants had to the note, which were those of an original maker.

■ The entire character of the proceedings between the parties supports this conclusion. While a separate corporate entity to be sure, the Finance Corporation was nevertheless nothing but a subsidiary of the American Radiator Company through which the latter financed its contracts and consummated its insurance arrangements with the Government through the Federal Housing Administrator. This is borne out by a number of specific things, notably, the fact that the remittance voucher by which the contractor Wagner was paid, contains this recital, "Remittance from American Radiator Company, New York, N. Y." Also, the form of the indorsement of the Radiator Company already quoted, indicates that that company and the Finance Corporation were, for all practical purposes, one and the same. We will assume that no material significance attaches to the fact that the note was postdated, since one to whom an instrument so dated is delivered, acquires the title thereto as of the date of delivery, provided the postdating is not done for an illegal or fraudulent purpose. Annotated Code of Maryland, Article 13, Section 31.

■ Also, defendants have no complete legal defense merely by virtue of the fact that they may not have authorized the amount that was inserted in the note, since they signed the note in blank and by voluntarily giving general authorization for its completion and negotiation, are responsible for certain consequences arising therefrom, albeit, we cannot think the fact that, throughout the entire negotiations and the execution of the various rather complicated inter-related documents, little effort appears to have been made to acquaint the defendants with the precise nature of the agreement. On the other hand, it would be an unwarranted stretching of the definition of a holder in due course to attribute this status to the Finance Corporation, under the present circumstances. It is true that knowledge by the purchaser of a negotiable promissory note that the consideration therefor was an executory contract, does not prevent him from becoming a holder in due course, unless there has been a breach of the contract to the knowledge of such purchaser. Black v. Bank of Westminster, 96 Md. 399, 54 A. 88; Home Credit Co. v. Fouch, 155 Md. 384, 142 A. 515. But there is more to the present situation than that. Here, the Finance Corporation was, as we have seen, really the alter ego of the parent corporation, the Radiator Company, which was, in effect, an original party to the instrument, since it caused its preparation and represented the Finance Corporation in the negotiation which placed it in the hands of the Finance Corporation. Assuming that a payee may be, under certain circumstances, a holder in due course, clearly Wagner was not such, and the Finance Corporation was in his same position with respect to knowledge of original defenses that the defendants, makers of the note, might have. Wagner was, in effect, an employee or agent of the Radiator Company, and the latter stood in the same relation to the Finance Corporation and was, in effect, the seller of the equipment. So whether we consider the Radiator Company as the seller or as the agent of the Finance Corporation, its knowledge is imputed to the latter.

To decide that a holder under the present circumstances is a holder in due course, would be to say that every commercial credit or loan organization could, merely by

552

the creation of an affiliate or subsidiary, relieve itself of the ordinary obligations arising from contracts of this kind, and could compel payment in all instances, regardless of what the original understanding of the parties may have been. Such a ruling would, we think, be unconscionable. The mere suggestion of it contradicts the asserted purpose of the Government pursuant to which the note was given and the work undertaken, i. e., to assist, not to oppress, the homeowner.

We do not mean to be understood as suggesting that the rule here laid down should be extended to a case, unlike the present situation, where the finance corporation is, in fact, an independent agent. Such apparently was the situation disclosed in United States v. McCulloch, D.C., 26 F. Supp. 7, where the financing was done through a separate bank which was not,—contrary to the situation of the Finance Corporation here,—virtually in the position of the seller of the equipment.

The prerequisites of a holder in due course are that he has taken the instrument under the following conditions: "1. That it is complete and regular on its face. 2. That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact. 3. That he took it in good faith and for value. 4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it." Article 13, Annotated Code of Maryland, Sec. 70.

▋ As has already been pointed out, the Finance Corporation was charged with the same knowledge as was Wagner and the Radiator Company because both of the latter were acting for and on behalf of the Finance Corporation. Wagner and the Radiator Company took the note when it was incomplete and irregular upon its face, and also being original parties to the instrument, they were charged with notice of any infirmities in the instrument, that is, they were subject, as original parties, to any defenses which the defendants, the makers, might have. In other words, the Finance Corporation really acquired the note from the defendants, the makers, and one who acquires negotiable paper from its maker or from one who is primarily liable for its payment takes it subject to all outstanding equities, when it is indorsed in blank or assigned by the payee even though such person acquires it before maturity.

See Beeler v. Terrell, Tex.Civ.App., 245 S.W. 459. Thus, the Finance Corporation did not meet prerequisites (1) and (4) of the definition of a holder in due course, quoted above, when viewed from any angle.

The case of United States v. Hansett, D.C., 30 F.Supp. 455, is in point and reaches the conclusion here reached, although the United States was allowed to recover because the defendant's proof fell short of establishing a failure of adequate performance on the part of the contractor. On the point now under consideration, the court said, 30 F.Supp. at pages 457, 458:

"It would have been possible of course to direct judgment for the plaintiff in .line with the decisions in United States v. McCulloch, D.C., 26 F.Supp. 7, and United States v. Hoover, D.C., 28 F.Supp. 556, but I have been unwilling to do that in view of the evidence in the case. The reason is that a terse ruling to the effect that the plaintiff's assignor was a holder in due course, so as to preclude the court from inquiring into anything beyond the question of title to the note, seemed to involve an unnecessarily technical ruling, and one which might conceivably ignore the essential equities of the situation.

"It is apparent that sections 91 and 96 of the Negotiable Instruments Law of the State of New York (Consol.Laws, c. 38) must be consulted to ascertain the legal status of the plaintiff's assignor; namely, the constituency of a holder in due course, and the rights of such a holder.

"As to the former, knowledge of the nature of the contract underlying the note, on the part of a discounting bank, may deprive the latter of its apparent status as a holder in due course; see Pellegrino v. First National Bank of Newark, N.Y., 210 App.Div. 584, 206 N.Y.S. 716.

"Such knowledge was held to be absent in one of the cases upon which plaintiff relies: First National Bank & Trust Co. of Elmira v. Conzo, 169 Misc. 268, 7 N.Y.S.2d 334, 335, thus: 'Nothing indicates that the plaintiff * * * knew or had any notice * * * that it (the note) was collateral to a contract with Moffat (the contractor) and payable only upon performance of that contract.'

"Credit Alliance Corporation v. Buffalo Linen Supply Co., 238 App.Div. 18, 263 N. Y.S. 39, is thought not to point inevitably to the decision here to be made. That case holds that, since there was no breach of an

implied warranty of fitness of the article to pay the purchase price of which the notes were given, at the time the notes were purchased, the plaintiff is not chargeable with any infirmity, i. e., a subsequent breach of that warranty was no defense. That case involved a washing machine and the notes were given to secure its purchase price. It is necessary to assume that, when the court said the breach of warranty had not occurred when the notes were purchased, it did not mean that the machine was not already in existence, but only that it had not been tested.

"Here the contract was for labor and equipment, to be performed, delivered and installed so as to accomplish a known purpose, in the future, which the discounting agency knew precisely when it advanced its money; human experience teaches that such contracts are fruitful sources of controversy touching the nature and extent of performance, and the transaction must have been entered into with that prospect in view. If so much be conceded, it must follow that the Finance Corporation's status as a holder in due course may well be deemed to be putative merely, and subject to precise definition in the light of all attendant circumstances.

"The other cases cited by plaintiff are not helpful: Hulburt v. Walker, 258 N.Y. 8, 179 N.E. 34, and Riverside Bank v. Woodhaven Junction Land Co., 34 App. Div. 359, 54 N.Y.S. 266, are not even remotely in point, and Gillette v. Hodge, 8 Cir., 170 F. 313, is based in part upon lack of notice to the plaintiff of the agreement between the original parties as to which a breach was asserted.

"The federal legislation giving rise to this and many similar transactions had for · its object the encouragement of instalment purchases of equipment on the part of those who might not otherwise be able to gratify their desires.

"Experience in other parts of the court has taught that frequently contracts were entered into by credulous purchasers with persons and enterprises utterly lacking in moral or financial stability; and that the latter promptly discounted their notes and then conveniently disappeared, or otherwise defaulted, leaving the purchasers, as makers of such notes, to deal only with the discounting agency or the government as insurer of the latter.

"Doubtless those observations have contributed to the conviction presently held, and which will persist until authoritative ruling is announced to the contrary, that it will not serve the ends of justice to dispose of such cases as this merely in response to the assertion that a financing agency is a holder in due course of such a note, and that the government, as its insurer, steps into its place."

The point was not considered in United States v. Lewin, D.C., 29 F.Supp. 512; United States v. Brooks, D.C., 28 F.Supp. 712; United States v. Nagorney, D.C., 28 F.Supp. 298, and United States v. Conti, D.C., 27 F.Supp. 756, relied upon by the Government.

■ Since, at the time of the trial, this court was largely influenced by a feeling that the claim of the Government was barred by the state statute of limitations; and the Supreme Court has since decided to ' the contrary in United States v. Summerlin, supra, this court will vacate the judgment heretofore entered in favor of the defendants, in accordance with Rule 6(c) and Rule 61 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, and the case will be reassigned for trial on the merits. See Sprague v. Ticonic Bank, 307 U.S. 161, 169, note 9, 59 S.Ct. 777, 83 L. Ed. 1184; United States v. Clatterbuck, D. C., 26 F.Supp. 297.

At the trial already had, some testimony was introduced on behalf of the defendants, for the purpose of proving failure on the part of the contractor properly to perform the work for which the note in suit was given by the defendants. The Government, on behalf of the Federal Housing Administrator, is now entitled to an opportunity to present its evidence on this question; and the defendants are likewise entitled to an opportunity to present additional evidence in reply thereto.